FRANCES M. SMITH, Respondent, *v.* THE CITY OF AUBURN, Appellant.

*Variance between pleading and proof — complaint alleging an improper discharge into a natural watercourse — proof that such watercourse had been destroyed and a drain substituted — amendment of a pleading on appeal.*

Where the complaint in an action, brought against a city to recover damages resulting from the overflow of a closed channel running across the plaintiff's premises, is framed upon the theory that the channel is a natural watercourse and that the city has abused its rights in respect to the same by improperly discharging sewage and an excessive volume of water therein, proof that the city had diverted and destroyed the natural watercourse and that with its co-operation and acquiescence a sewer or drain had been constructed in the place of the natural watercourse constitutes a substantial variance, and a recovery cannot be had upon the latter theory without an amendment of the complaint.

Where the referee before whom the action is tried refuses to allow an amendment of the complaint to meet such variance in the proof, but permits the plaintiff to recover upon the pleadings as originally drawn, the Appellate Division will not, for the purpose of sustaining the judgment, amend the pleadings so as to conform to the proof.

APPEAL by the defendant, The City of Auburn, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cayuga on the 25th day of April, 1903, upon the report of a referee, enjoining and restraining the defendant from discharging sewage and surface water from its streets into a natural watercourse flowing across and through the plaintiff's land, and awarding the plaintiff the sum of $1,840 damages.

*L. A. Pierce*, for the appellant.

*E. C. Aiken*, for the respondent.

HISCOCK, J.:

We think the judgment appealed from must be reversed and a new trial granted because the action was largely tried and decided upon a theory different from that set forth and outlined in plaintiff's complaint. In order to appreciate the variance which we deem to exist it will be essential to review some of the leading features of the case.

As indicated by the nature of the judgment already referred to, it is claimed by plaintiff that defendant has been guilty of unlaw-

fully causing her premises in the city of Auburn to be flooded with water and sewage. There seems to be no question but what her premises were so flooded from time to time for several years prior to the commencement of this action, but there is a very substantial dispute in relation to defendant's responsibility therefor. The flooding directly resulted from the overflow of a closed channel running across the premises in question. It was alleged in the complaint that defendant caused this overflow by connecting with this channel at various points before reaching plaintiff's lands, sewers, catch basins and conduits whereby a great amount of surface drainage from streets and sewage was collected and discharged into the channel and ultimately upon plaintiff's lands. Upon the trial it quite conclusively appeared that defendant had not connected any sewers with the channel in question, but had constructed various catch basins and conduits whereby the surface drainage from portions of streets lying in the vicinity of this channel were discharged into it; that whatever sewage was collected therein came from the private sewers of landowners living upon the line of the channel.

The difficulty in the case arises from the fact, however, that plaintiff by her complaint sought to charge the defendant with liability for its acts upon the theory that this was a natural watercourse which extended across plaintiff's premises, whereas by the proofs and findings of the learned referee the defendant has been held liable upon the theory that the watercourse had been abandoned and that there had been substituted therefor with its co-operation and acquiescence a sewer.

There is no controversy but that originally there was a natural watercourse originating with and fed by springs, traversing quite a portion of the city of Auburn, including plaintiff's premises, and ultimately emptying into Owasco creek. Neither is there any dispute, as we understand it, but that the portions of the streets, from which defendant collected and discharged into the channel in question the surface water, lay within the natural watershed of this watercourse. Sometime prior to the commencement of the action this watercourse had been inclosed or covered. As bearing upon our construction of the theory upon which the plaintiff framed her complaint, we may quote certain allegations therefrom as follows: "Plaintiff further alleges that running through said premises (of

Fourth Department, November Term, 1903.        [Vol. 88.

plaintiff) from east to west *is* a natural watercourse, fed by springs and in which water runs continually; that prior to about January, 1890, there was not at any time sufficient water in said stream to cause serious damage or injury to claimant's said premises or the buildings thereon; that since about said time and down to the present time said defendant, acting through its certain officers and agents, caused certain sewers, drains, conduits and catch basins to be built, constructed and connected ı * * * and so built, constructed and connected said sewers, conduits and catch basins that the same should discharge into said watercourse above claimant's said lands and premises; that said sewers, drains, conduits and catch basins were so located and constructed that thereby in and through them a large amount of rain and waste water and sewerage * * * is received * * * and are wrongfully made to drain, and wrongfully discharged into said watercourse, forming new and destructive currents and volumes of water and sewage." And at other places in said complaint are found other allegations referring to said watercourse as then existing and to defendant's wrongful use thereof by improper collection and discharge of water into the same. Without referring to all of these allegations in detail or at length, we think that a fair and reasonable construction and interpretation of them leads to the conclusion that plaintiff by her complaint limited her right of recovery against the defendant to an abuse by it of its rights in and to a natural watercourse flowing across her premises. The counsel for the respondent and the learned referee in a discussion of this question urge that other views may be taken of the complaint as a whole, but we are unable to agree with these contentions.

Without attempting to analyze completely and exactly the rules which would govern defendant's use of a natural watercourse, it may be stated generally and without doubt that it had certain well-defined rights of drainage thereinto. This is not disputed by the respondent, but so far as surface drainage of its streets is concerned complaint alone is made because, owing to the macadamized surface of the streets more water drained off than would have done in the natural condition of the earth, and also because by the construction of catch basins and conduits the flow of water was accelerated. Again, without attempting at this time to determine just what

liability might attach to defendant if plaintiff's complaint in these two respects was sustained, it still may be said that defendant certainly would not become liable unless by this means the drainage was increased to an extent beyond that which could be accommodated by the watercourse in its natural condition. The defendant would not be made liable for any damages which might come to a landowner upon the line of the watercourse as the result of unduly narrowing and obstructing the same as it is claimed the plaintiff has done

When the case came on for trial, the learned referee, in spite of the objections made in due form and time by the defendant, allowed proof that in 1880, by the construction of what was known as the Franklin street sewer and at various and subsequent dates by other acts, the defendant had diverted and destroyed this natural watercourse, and that thereafter substantially upon its line a closed sewer or drain had been constructed which existed at the time the action was commenced and from which the overflows in question occurred. Evidence was also given to the effect that defendant had taken part in the construction and maintenance of this sewer or drain. And finally, by various findings and conclusions, directly or inferentially, the referee determined that the watercourse had been destroyed and that in its place a sewer or drain had been constructed with the co-operation and acquiescence of the defendant and for the condition and operation of which it was to some extent responsible, and the liability of the defendant, by necessary inference at least, was predicated upon this theory. We do not deem it essential to spend considerable time in demonstrating that this was a very different form of liability from that originally alleged in the complaint. We shall merely advert again to the condition of the channel upon plaintiff's premises. It appeared that its size under her barn was smaller than the dimensions which prevailed before her premises were reached. It also appeared that when the floods came upon her premises they seemed to break out at this point. If defendant had adopted this form of construction and thereafter drained into this alleged sewer a volume of water which it could not accomodate, it will be seen at once that its liability might be very different from that which would prevail in the case of a natural watercourse improperly obstructed by the plaintiff.

The learned referee himself recognizes and very distinctly refers to the different rules of liability which would govern the two cases respectively. The counsel for the respondent seemed to appreciate that there was a substantial variance between the pleadings and the proofs, for upon the trial he sought to have the former so amended as to conform to the latter. While we may feel that upon a trial had before a referee the ends of justice might have been furthered by allowing such an amendment upon proper terms, the referee for some reason refused to allow the same, and, therefore, the question is put into and remains in the case upon this appeal.

Various reasons are urged upon our consideration why the judgment should not be reversed for the cause discussed; but while we appreciate that the case has received very careful attention and been elaborately considered in and covered by the findings of the referee, we feel unable to adopt this course.

It is suggested that this court now has the power upon this appeal to amend the pleadings so as to conform to the proofs which were offered upon the trial. We do not feel that we should do this. The question urged upon our attention by the appellant was fairly presented upon the trial. The motion to amend the pleadings was denied, and the ruling thereby in effect made that the parties should be governed in their conduct of the trial by the pleadings as they then existed. The learned counsel for the appellant may very well have elected to stand upon his exceptions and try the action under the construction which he placed upon the complaint, rather than to accept the views of the referee and try the case upon the theory which finally governed its disposition. The error, as we conceive it, which led to the results complained of by the appellant was so substantial a one that we are unwilling to assume that the defendant may not have been injured by it.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide event.

All concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.