Collin, J.
 

 The southerly line of the defendant’s land is the northerly line of the plaintiffs’ land, and in a chasm through the lands flows the Chateaugay river. The defendant, a domestic corporation, has been engaged since 1903 in supplying electricity for public and private use in the village of Chateaugay and elsewhere for lighting and power. Prior to July, 1903, at a point about six hundred feet northerly from the said boundary line, the defendant constructed in the river a dam by which the water was set hack or raised upon the perpendicular rock banks through a distance of about four hundred and twenty feet of the plaintiffs’ lands, lessening the amount of available power upon the river above it. The premises of the plaintiffs so flooded consist of barren, perpendicular rock which are not shown, as the finding of the
 
 *300
 
 trial court states, to be of any value. The defendant has expended about $97,000 in the construction of the dam and in building and equipping its power house and lines.The plaintiff McCaghey constructed the dam and a portion of the plant of the defendant and knew then the height of the dam and the height to which the water in the river was raised by it. The plaintiffs purchased their lands in 1906. Arthur H. McCann, Daniel B. McCann and Frank A. Fielding were, while the dam was being constructed, and since have been, stockholders in the defendant and all the plaintiffs when purchasing the lands knew they were flooded by reason of the dam and the extent of the flooding. Plaintiffs’ grantors did not at any time object to the construction or maintenance of the dam or the flooding of the lands. '
 

 The plaintiffs as riparian owners had the strict legal right to have the natural fall in the river, that, is, the difference of level between the surface where the river first touches their land and the surface where it leaves it, uninterfered with. The defendant in raising the water through the four hundred and twenty feet by the dam and thus destroying that difference of level commit-, ted a trespass upon the lands of the plaintiffs. Such trespass was continued from the time the dam was constructed to the entry of the judgment and the defendant was legally liable to continuous actions at law, in which the recovery would be for the damage sustained prior to the commencement of each action and subsequent to the commencement of that last preceding. The trespass being continuous, the plaintiffs had the right to resort to equity for the purpose of enjoining its continuance and to thus prevent a multiplicity of actions at law to recover damages.
 

 It is a general rule that when one without right attempts to appropriate the real property of another by acts or results which will create an easement or ripen into a permanent right, a court of equity will compel the
 
 *301
 
 trespasser to undo as far as possible what he has wrongfully done. This rule, however, is not rigid. There are many authorities declaring and applying exceptions to it. We recognized this fact in adopting the language of Judge Werner in
 
 Whalen
 
 v.
 
 Union Bag & Paper Co.
 
 (208 N. Y. 1, 4), in which the plaintiff was seeking to protect by mandatory injunction a legal right injured by a continuous trespass, as follows: “ It is not safe to attempt to lay down any hard and fast rule for the guidance of courts of equity in determining when an injunction should issue.” The ownership of property will be protected unless there are other considerations which forbid, as inequitable, the remedy of the prohibitive or mandatory injunction. A court of equity can never be justified in making an inequitable decree. If the protection of a legal right even would do a plaintiff but comparatively little good and would produce great public or private hardship, equity will withhold its discreet and beneficent hand and remit the plaintiff to his legal rights and remedies.
 

 In the present case the plaintiffs have no equities and no larger or other claim than that an invasion of a technical and profitless legal right should be corrected. One of them constructed the dam by which the invasion was caused, and the others were, as stockholders of the defendant, parties to such construction in a substantial sense. They bought the lands with complete knowledge that the continuing trespass was upon them and of its cause and extent. Their, predecessors in title had not at any time complained of the dam or its effects. They had sustained no damage, and there is neither finding nor request to find that the trespass was preventing or interfering with plaintiffs’ present or contemplated use of their lands.
 

 The defendant, upon the other hand, had been since the completion of the dam and its plant manufacturing and supplying electric light and power to the public and
 
 *302
 
 individuals. We may presume from its defense to this action that it is satisfying a public demand and that the present height of the dam is necessary for its useful operation. Since the completion of the dam it has expended a considerable sum of money in improving its plant, and the entire sum spent by it in construction, • equipment and improvement is, for the locality, large. It has many times been said by us and by the courts of other states that under such or analogous facts a court of equity will not decree the issuance of a mandatory injunction. An equity court is not bound to decree an injunction where it will produce great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right.
 
 (O'Reilly
 
 v.
 
 N. Y. El. R. R. Co.,
 
 148 N. Y. 347;
 
 Gray
 
 v.
 
 Manhattan Ry. Co.,
 
 128 N. Y. 499;
 
 Knoth
 
 v.
 
 Manhattan Ry. Co.,
 
 187 N. Y. 243;
 
 McClure
 
 v.
 
 Leaycraft,
 
 183 N. Y. 36;
 
 Llandudno Urban Dist. Council
 
 v.
 
 Woods,
 
 L. R. [2 Ch. 1899] 705;
 
 Levi
 
 v.
 
 Worcester Consolidated St. Ry.,
 
 193 Mass. 116;
 
 Starkie
 
 v.
 
 Richmond,
 
 155 Mass. 188;
 
 Bassett
 
 v.
 
 Salisbury Mfg. Co.,
 
 47 N. H. 426;
 
 Becker
 
 v.
 
 Lebanon, etc., St. Ry. Co.,
 
 188 Pa. St. 484.)
 

 The judgment of the Appellate Division, in that it declares the plaintiffs’ title and their opportunity to enforce it, adequately protects the plaintiffs from the acquisition by the defendant of a right or title by prescription.
 

 The judgment appealed from should be affirmed, with costs.