IGNACY POWLOWSKI and ANTONINA POWLOWSKI, Plaintiffs, *v.* MOHAWK GOLF CLUB, Defendant.

Supreme Court, Schenectady County, June, 1922.*

**Equity — injunction will not be granted when it will cause great injury to defendant and confer no benefit on plaintiffs — deeds — fence across street laid out on map but never used.**

Plaintiffs' deed to three lots as laid out on the map by their grantor and filed in the county clerk's office contained the following clause: " Together with the

---

* Received too late to be inserted in proper place.— [REPR.

fee, in so far as we have the right so to convey the same, of all the streets and ways shown on said plan in common with the owners of the other lots shown on said plan, subject to the right of all other lot owners to make the customary use of said streets and ways." Defendant golf club is the owner of part of the tract as plotted by plaintiffs' grantor and maintains an iron fence on its boundary which crosses one of the streets as laid out on the map referred to. No part of the street within the fence has ever been used by the public or by plaintiffs; it leads only to defendant's property. Plaintiffs' access to the nearest public highway is not interfered with in any respect and they do not claim to have suffered any actual damage.

Plaintiffs bring suit for an injunction against defendant restraining it from maintaining the fence across the street for the sake of the enforcement of a legal right from which they can receive no benefit. *Held*, that as an injunction will cause great injury to defendant and confer no benefit upon plaintiffs, equity will not lend its aid to such an enterprise and the injunction is denied with six cents damages to plaintiffs without prejudice as to future action for any substantial injury hereafter occurring.

SUIT for an injunction.

*Abram Lifset (Andrew J. Nellis*, of counsel), for plaintiffs.

*Walter Briggs* and *Cyrus W. Briggs,* for defendant.

ANGELL, J.     Plaintiffs bring this action for an injunction restraining defendant from maintaining a wire fence which it has constructed across and over Islesboro street. Defendant asserts that it has bought the property lying easterly of the fence, and that the fence is lawfully maintained as a line fence between its property and that of the plaintiffs and others. The facts have been stipulated by the parties and are substantially as follows:

In April, 1919, one Everett C. Wells plotted into lots and streets a tract of land owned by him in the town of Niskayuna, Schenectady county. The tract thus plotted was entitled "Reservoir Park, Section Two" on a map thereof filed in the Schenectady county clerk's office May 2, 1919. Thereafter, by deed recorded July 16, 1919, plaintiffs became the owners of lots numbered 354, 355 and 356 on the map, situate on the southerly side of Islesboro street, as thus laid out.

The defendant is a corporation organized under the Membership Corporations Law for the advancement of golf and other sports and for the promotion of social intercourse among its members. For a number of years prior to 1919, and at the commencement of this action, defendant was and still is the owner of about 170 acres situate easterly and southerly of and immediately adjacent to the Wells development, and wholly used for the purposes mentioned.

On July 24, 1919, in furtherance solely of such purposes, the defendant became and ever since has been the owner in fee of all

that portion of said Reservoir Park lying westerly and northerly of and abutting its property above mentioned, comprising about fifteen acres. Its westerly boundary is a straight line running northeasterly from the southwesterly corner of lot 248 to the northwesterly corner of lot 442, as delineated on the map referred to.

About April 21, 1921, the defendant constructed and still maintains a five-foot iron fence along that portion of its westerly line between the northwesterly corner of lot 231 and the northwesterly corner of lot 442 aforesaid, extending from the northeasterly corner of the Schenectady reservoir property to the private lands of one Benedict. This fence crosses Islesboro street at a point about 275 feet easterly of the premises owned, and for some time prior to the commencement of this action occupied by the plaintiffs as a dwelling place. The fence shuts off the easterly portions of Islesboro and two other parallel streets from the westerly portions thereof. It also shuts off three other streets designated on the map which run practically at right angles to Islesboro street.

The premises so acquired by the defendant in July, 1919, are bounded northerly entirely by private lands, and for nearly one-half the length of their westerly boundary by lands belonging to the city of Schenectady and permanently appropriated for use as a storage reservoir for the city water supply. On the easterly and southerly sides the tract adjoins defendant's other property. There are no public highways or thoroughfares on either said private lands or city reservoir property.

A public highway known as Van Antwerp road runs through said subdivision, and is available to plaintiffs and other purchasers of property therein. This road is on an average about 375 feet distant westerly from said fence, and about 176 feet from the westerly line of plaintiffs' premises. All of the streets laid out on the map opened directly or by means of other streets there laid out on Van Antwerp road, which is and has been the only public highway available to the lots on the easterly side thereof. Plaintiffs have open and easy access to this road, without passing over any part of defendant's parcel of fifteen acres.

The streets and portions of streets fenced off by defendant do not connect with any public highway, except Van Antwerp road. Neither the plaintiffs nor any other owners of lots designated on the map can, or prior to the building of defendant's fence could, reach any public highway except by traveling westerly or northerly from their lots to Van Antwerp road. Free passage to and from that road from all the lots westerly of the fence has been in no wise interfered with by its erection. No portion of Reservoir Park lying easterly of the fence (the tract now owned by defendant)

has ever been used by the public, or by the plaintiffs, as roads or streets for purposes of ingress or egress to and from the property of the plaintiffs, or otherwise.

Plaintiffs do not allege that they have suffered any actual damage because of the construction of the fence and their consequent deprivation of the use of the streets easterly thereof.

The questions to be determined are, is defendant within its rights in constructing and maintaining the fence, and are plaintiffs entitled to have it removed?

Plaintiffs' deed in its recital of the premises conveyed expressly referred to the map and made it the basis of the description of the property. The concluding clause of the description reads: " Together with the fee, in so far as we have the right so to convey the same, of all the streets and ways shown on said plan, in common with the owners of the other lots shown on said plan, subject to the right of all of the lot owners to make the customary use of said streets and ways."

Where a person purchases lots in a tract laid out and plotted as this one was, his right of access to his property cannot be interfered with by any obstruction of the streets. Thus in *Lord* v. *Atkins*, 138 N. Y. 184, the court says: " It is well settled that when the owner of land lays it out into distinct lots, with intersecting streets or avenues, and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When, in such a case, a lot is sold bounded by a street, the purchaser and his grantees have an easement in the street for the purposes of access, which is a property right."

It does not matter that the streets plotted on the tract were not accepted by the city and had not become public streets or highways. *Weeks* v. *N. Y., W. & B. Ry. Co.*, 207 N. Y. 190; *Bissell* v. *N. Y. C. R. R. Co.*, 23 id. 61. A purchaser of a lot in such a tract has a private easement over such so-called streets, and has a right to a street open at both ends as it appeared on the map, and may compel the opening thereof as a means of access to his premises. *Taylor* v. *Hopper*, 62 N. Y. 649; *Haight* v. *Littlefield*, 147 id. 338.

It is apparent, however, in this case that the fencing off of a portion of Islesboro street does not obstruct in any way plaintiffs' access to their property. Van Antwerp road is less than 200 feet westerly from plaintiffs' lots. To go in the other direction, easterly on Islesboro street, would lead only to streets laid out on the map from which there is no access to any other public highway.

Therefore, there would be nothing in the facts of this case to

prevent defendant from fencing off its tract if the deed of the plaintiffs had been in the usual form, with a reference to the map of the property. In such case plaintiffs would have had an easement in such streets as were necessary for access to their lots from the public highway. Their rights in the streets would have ended there.

Plaintiffs' grantor who laid out the property was not content with this kind of a conveyance; but perhaps with the idea of making his offerings more attractive, concluded his description of the lots with the paragraph above quoted. In view of this grant in the final paragraph, it does not seem to me that it can successfully be contended that plaintiffs had no rights whatever in the streets which bounded the lots subsequently purchased by defendant which comprise the fifteen-acre parcel which it subsequently fenced. Defendant contends that this conveyance gave plaintiffs no more than it would if the concluding paragraph in the description above quoted had been omitted. I cannot so conclude. The language is definite and certain. Its clear purport cannot be disregarded. When there was granted to plaintiffs, in common with others, the fee of all the streets shown on the plan, a property right was conveyed and became vested in them. Such a right cannot be taken away without process of law by a ruling or determination of a court, even if the right has but a nuisance value.

The cases cited by defendant, principal among which are *Reis* v. *City of New York*, 188 N. Y. 58, and *Matter of Mayor of N. Y.*, Id. 581, do not support its contention. They turn upon what is a reasonable access to lots in somewhat similar plots. They do not determine or intimate that specific language such as was used in plaintiffs' conveyance may be held to have no effect.

Assuming the legal rights of the parties to be as thus indicated, it does not necessarily follow that plaintiffs are entitled to an injunction. They do not claim that they have been damaged or are being damaged in any way by the maintenance of the fence by defendant. It is urged, however, that their property may be injured sometime in the future. While the situation remains substantially as at present it is difficult to perceive how this can be. If the fence across Islesboro street were taken away it would only enable plaintiffs to go upon that street to defendant's private property. No access to any public highway could be obtained. No right of any kind could be gained except one to wander about the strip sixty feet wide laid out in streets and included in the fifteen acres purchased by defendant. This privilege or right is a naked one, carrying with it no possibility of beneficial use or enjoyment.

On the other hand, to enjoin defendant from maintaining the fence would render this fifteen acres valueless for its uses. It maintains a golf club and grounds for the recreation of its members and the enhancement of their physical well-being. Its membership consists of several hundred residents of Schenectady and surrounding territory. The purposes for which defendant exists are universally recognized as salutary. To destroy its opportunities to use the fifteen acres will not only cause it financial loss, but will seriously interfere with the objects of its organization and maintenance.

Plaintiffs seek to bring this injury upon defendant for the sake of the enforcement of a legal right from which they can receive no benefit beyond the gratification of a capricious whim. Equity does not lend its aid to such an enterprise. The principle applicable is stated by Judge Collin in *McCann* v. *Chasm Power Co.*, 211 N. Y. 301, as follows: " The ownership of property will be protected unless there are other considerations which forbid, as inequitable, the remedy of the prohibitive or mandatory injunction. A court of equity can never be justified in making an inequitable decree. If the protection of a legal right even would do a plaintiff but comparatively little good and would produce great public or private hardship, equity will withhold its discreet and beneficent hand and remit the plaintiff to his legal rights and remedies."

In that case plaintiff sought to enjoin defendants from the maintenance of a dam which set back the water over a portion of the Chateaugay river owned by the plaintiffs so that the entire fall of the river on plaintiffs' property was destroyed. But plaintiffs were making no use of the fall, and showed no damage. The court said: " The plaintiffs as riparian owners had the strict legal right to have the natural fall in the river, that is, the difference of level between the surface where the river first touches their land and the surface where it leaves it, uninterfered with. The defendant in raising the water through the four hundred and twenty feet by the dam and thus destroying that difference of level committed a trespass upon the lands of the plaintiffs. * * *

" It is a general rule that when one without right attempts to appropriate the real property of another by acts or results which will create an easement or ripen into a permanent right, a court of equity will compel the trespasser to undo as far as possible what he has wrongfully done. This rule, however, is not rigid. There are many authorities declaring and applying exceptions to it."

This case, like the one there under consideration, is one coming within the exceptions to the general rule. The same doctrine was applied in *O'Reilly* v. *N. Y. El. R. R. Co.*, 148 N. Y. 347, where defendant appropriated easements of light, air and access

belonging to the plaintiff, and an injunction was sought. The court in reviewing various cases said on page 354: " Equitable relief by way of injunction in cases of trespass may often depend for its award upon the nature of the particular case. In such cases the court must look into them to see if a strong case of actual and irreparable mischief is presented and if the circumstances justify equitable interference."

The principle is likewise stated in 22 Cyc. 782, thus: " When the injunction will cause great injury to defendant and will confer no benefit or very little benefit in comparison upon the complainant, it is within the discretion of the court to refuse the application."

That, it seems to me, is the situation here. An injunction will cause great injury to defendant. It will confer no benefit upon plaintiffs. Equity should not extend the sanction of its remedies to such complainants.

Plaintiffs are entitled to recover six cents damages. *New York Rubber Co.* v. *Rothery*, 132 N. Y. 293. The injunction asked for is denied, but without prejudice to the right of the plaintiffs to bring such action as they may hereafter be advised, based upon facts not inconsistent with those herein adjudged for such relief as they may be advised on account of any injury to their property hereafter occurring; or plaintiffs may at any time apply at the foot of the judgment herein, upon showing substantial injury from any cause to them hereafter occurring, for an injunction substantially as asked for in the present action, or as the court may direct. This provision regarding the judgment is in accordance with the authority of *McCann* v. *Chasm Power Co.*, and *O'Reilly* v. *N. Y. Elev. R. R. Co.*, *supra*.

Judgment accordingly.