Richard S. Heller, J.
This claim seeks to recover for damages to a building alleged to have resulted from water flowing from a State highway. Claimant owned and occupied a house and barn located on the east side of a State highway known as Route No. 46 which runs generally in a north-south direction from the City of Oneida in Madison County.
Route No. 46 was originally constructed as a State highway in 1915 and the roadway was widened and resurfaced in 1933. There has been no change in the elevation of the highway other than from the resurfacing since it was originally constructed.
A driveway leads from the State highway to claimant’s barn on the east side of the road. Claimant testified that prior to the resurfacing in 1933 he had a culvert installed under this driveway but that he was required to remove it by the State in 1933. It is not clear from the testimony as to whether this culvert was located on the State right of way or on claimant’s property.
Claimant asserted that water flowing along the east side of the road ran down the wheel tracks of his driveway and eroded or otherwise damaged his barn. Claimant’s expert testified that these wheel tracks were from four to six inches below the surface of the surrounding ground and the ground itself slopes downward from the highway to claimant’s house and barn.
Claimant’s expert described the flow of water on the east side of the highway as in a shallow ditch while employees for the State testified that no ditch was maintained along the east side of this highway and that only ordinary grading and cleaning of shoulders was performed. Whether described as a ditch or the edge of a shoulder, there unquestionably was a depression along the edge of the east shoulder of the highway and the bottom of this depression was below the highway pavement and shoulder and was also slightly lower than the elevation of claimant’s driveway at a point 15 feet from the edge of the pavement.
The only water shown to be involved in the highway development was surface water and whatever water was carried in this ditch apparently came from rain falling on the east side *1076 of the pavement and extending for a distance of approximately 75 feet north of the driveway.
These conditions existed from the time of the resurfacing of the road in 1933 but claimant asserted that he did not become aware of the reason for the damage to his barn until August of 1953 when he observed water running down to the barn along the wheel tracks of the driveway during a severe rain storm. The barn itself was about a hundred years old and prior to 1953 had been moved from its original foundation to its location at the time of the damage complained of. The barn was set on blocks or stones with the sills almost on the ground.
A State engineer testified that the construction and maintenance of the highway was in accordance with good engineering practice. The expert for the claimant testified that proper construction and maintenance included the installation of a pipe carrying the drainage “ along the highway ditch ” and under claimant’s driveway.
The only water involved in the testimony was surface water. The applicable rule for determination of State liability was stated in Fox v. City of New Rochelle (240 N. Y. 109, 112) where the court said:
‘ ‘ The city has no control over the natural flow of the surface water. Nor is it liable for damage caused by the discharge of surface water which is the result solely of the grading of streets, the erection of buildings and the improvement of private grounds. (Rutherford v. Vil. of Holley, 105 N. Y. 632; Smith v. City of Auburn, 88 App. Div. 396, 398; Anchor Brewing Co. v. Vil. of Dobbs Ferry, 84 Hun, 274; affd. on opinion below, 156 N. Y. 695.)
“ If, however, the city collects surface water into a single channel and casts it in a large and substantially increased volume on an adjacent owner so that the stream will be filled beyond its natural capacity and thereby causes the stream to overflow and flood his lands, the owner has a cause of action. (Noonan v. City of Albany, 79 N. Y. 470.)”
Claimant’s testimony itself establishes that what he is complaining of is the discharge of surface water resulting solely from the grading and improvement of the street for he described the situation in the following language: “ It was coming from the road, and I looked up and I could see the water shedding from the rounded top of the cement of that highway, and shortly after the rain let up I went out and saw something that amazed me quite a bit, and I noticed as I looked up towards the north that the flood water had made, — you might call it a perfect channel, coming off from that highway near my neigh *1077 bor’s place. It started there, and I noticed that the sod that forms at 18 inches or 20 inches from the cement, that kept all the water that was coming off that highway.”
The only reason that any surface water flowed toward claimant’s house and barn was the natural topography of the land. The water ran down wheel tracks which were maintained by the claimant at a substantially lower level than the surrounding ground. The proof here is insufficient to establish that the State so changed, channelled or increased the flow of surface water onto claimant’s land by artificial means so as to cause damage to claimant’s property. (See Kerhonkson Lodge v. State of New York, 4 A D 2d 575.)
The motion for dismissal of the claim made at the conclusion of the trial by the Attorney-General is granted.
The foregoing is the written and signed decision of the court upon which judgment may be entered.
Let judgment be entered accordingly.