Frederic T. Henry, J.
In this action, the plaintiffs seek to restrain the Town of Fleming from maintaining a drainage system along a public highway in a realty subdivision known as Forest Hills and discharging the water therefrom upon the premises owned by the plaintiffs.
The plaintiffs have been the owners since 1937 of a farm of about 50 acres in the Town of Fleming which fronts on the West Lake Road and is bounded on the south by Mobbs Road, both public highways. Plaintiffs’ farm is generally lower than the lands lying north and west thereof and there exists thereon a natural depression which is drained by field tile southerly into a highway ditch on the north side of the Mobbs Road. From thence, the waters are conducted easterly under the West Lake Road and into Owasco Lake. In March, 1956, the defend *169 ant, Joseph J. Carr, purchased about 60 acres of higher land adjoining the plaintiffs’ farm on the north. In the course of his business as a home builder, the defendant, Carr, established on the southern portion of his land, along plaintiffs’ north line, a realty subdivision known as Forest Hills. The survey map shows 40 building lots extending along the southerly and westerly boundaries of Carr’s property and a proposed road 50 feet in width adjoining the building lots, running westerly from the West Lake Road. Commencing in the Spring of 1957 and continuing through 1958, the defendant, Carr, erected one-family residences on the lots. He also constructed a roadway to service these dwellings along the course of the proposed roadway. Generally, the roadway is more than 125 feet north of the plaintiffs’ north line, except at its eastern extremity. At that end, at a point about 278 feet from the junction with the West Lake Road, and at the lowest point in the new roadway, there is a 10-inch culvert under the roadway. The southern end of this culvert terminates on land still owned by Carr at a point about 12 feet from the plaintiffs’ north line. The roadway as completed, consists of a travelled portion 14 feet in width covered by an 8-inch base of coarse gravel with shoulders 4 feet wide graded to shallow ditches to carry away any surface water from the highway. On December 21,1956, Carr conveyed the area designated on the map as 11 Proposed Road ” to the Town of Fleming. This conveyance was accepted by the town on condition that Carr construct a road thereon in accordance with written specifications. On May 22,1958, the town accepted the road and has since maintained it as a town highway. During the trial, this court dismissed this action against the defendant Carr. Since he no longer owned or controlled the road and ditches an injunction against him would be ineffectual.
The gravamen of plaintiffs’ action is that the maintenance of the roadside ditches and culvert has produced on their land a flooded condition and a deposit of soil and dirt carried by the flood waters. Erosion of plaintiffs’ land arising from the concentration of water through the culvert was neither pleaded nor proven.
From the evidence, the court determines that the plaintiffs’ farm is at the bottom of a natural depression, which includes the Forest Hills subdivision. The natural contour of the land lying north, west and east of plaintiffs ’ farm is such that surface waters thereon would tend to flow onto plaintiffs’ land and be collected in a temporary pond or pool at the low point. This area is drained by field tile southerly to the Mobbs Road ditch. From the evidence, it appears that the land purchased by Carr *170 lies within the natural watershed described above and that the construction of the highway with its accompanying ditches did not increase the size of that watershed. There is evidence from disinterested witnesses that a part of plaintiffs’ land was flooded periodically before the construction of the road. Neighborhood children used a pond for Winter ice skating and, on occasion, ducks were seen to frequent a pond on plaintiffs’ farm. The elevation of the West Lake Road is such that the Town of Fleming would have no other means of disposing of surface waters except by the installation of a pump or excavation of ditches to impractical depths.
The evidence fails to show the existence of any natural watercourse with well-defined boundaries. However, the size of the watershed which drains through plaintiffs’ farm has not been increased. The effect of the highway with its ditches and culvert has been only to collect and discharge in mass that water which otherwise would flow onto plaintiffs’ land in a diffused state.
Problems involving interference with the flow of surface waters have taxed the judicial wisdom of the courts in many States. It would appear that several divergent views exist, the first, the so-called “ common enemy doctrine ” whereby each owner may dispose of surface water without liability to his neighbors and the second, the so-called ‘ ‘ civil law rule ’ ’, that adjoining landowners are entitled to have the normal course of natural drainage maintained with the lower owner bound to accept and dispose of water which comes naturally to his land but likewise entitled not to have the normal drainage artificially changed or increased. (Ann. 59 A. L. R. 2d 422; 24 Minn. L. Rev. 891.) It is doubtful whether either rule exists today in the extreme form stated. The courts of New York have had frequent occasions to pass upon the subject of surface waters. The accepted rule was stated in Kossoff v. Rathgeb-Walsh (3 N Y 2d 583, 588), as follows: “ Under the common law adopted in this State, either proprietor can improve his land, according to his own desire in any maner to which the land is suited, without being liable to the abutting owner for change in the flowage of the surface water provided that he does not resort to drains, pipes or ditches.”
Collection of surface water by a municipality into a single channel in an increased volume so as to cause damage to an adjacent owner has been held actionable. (Noonan v. City of Albany, 79 N. Y. 470; Mennito v. Town of Wayland, 56 N. Y. S. 2d 654; Gibson v. State of New York, 187 Misc. 931; Kerhonkson Lodge v. State of New York, 4 A D 2d 575.) The rule *171 appears to be accurately stated in Farnham on the Law of Water and Water Eights (Vol. 2, § 185, p. 966) as follows: ‘ ‘ Even courts which hold that the municipality is not liable for changing the flow of surface water so as to cast it onto adjoining property by changing the grade of its streets hold the municipality liable where, by the street improvements, water is collected in one place, and then discharged in a body onto adjoining land. If, for any reason, the water is gathered in a body, it must be taken care of and conducted safely to an outlet in such a way as to do no injury to private property.” And at page 965: “A municipal corporation cannot collect surface water and discharge it in a mass onto the land of a private owner ”. However, it is not the mere discharge in a body at a single point which creates liability. The plaintiffs must prove that the construction of the roads and ditches so increased the flow of surface water as to result in damage. (Kerhonkson Lodge v. State of New York, 4 A D 2d 575, supra; Rocktvell v. State of New York, 15 Misc 2d 1074.) A distinction was made in Melin v. Richman (96 Conn. 686, 690) wherein the court said: “ The purport of this instruction is, that when a landowner artificially collects water upon his own land, in order to avoid liability he must cause it to be so diffused that it will pass from his land upon that of his neighbor as it would originally have done if not so collected. This statement of law is not accurate in detail, because the diffusion required of artificially collected surface water need only be to such an extent as to prevent this water passing in an increased volume upon the neighbor’s land to his substantial injury.”
In this case, the court fails to find that the continued maintenance of the ditches and sluice will cause any increase in the total amount of surface water that would otherwise flow upon plaintiffs ’ property. A 10-inch culvert under the highway terminates upon lands owned by Carr 12 feet northerly of the plaintiffs’ lands, giving some opportunity for the diffusion of the water discharged through the pipe. Plaintiffs neither pled nor proved that erosion of their land resulted. Evidence of loss of crops was unsatisfactory since it appeared that the entire crop had been poor that year. Under these circumstances, even though a technical legal right has been violated, should the court enjoin the continuance of the ditches and culvert?
In McCann v. Chasm Power Co. (211 N. Y. 301), the defendant had constructed a dam which raised water upon land owned by the defendant. The Court of Appeals recognized that a continuing trespass had been committed and that the plaintiff had the right to resort to equity for an injunction to prevent *172 a multiplicity of suits yet the court denied the injunction on the grounds that it would do the plaintiff but comparatively little good and would produce a great public and private mischief. The decision was cited and followed in Howland v. Union Bag & Paper Corp. (156 Misc. 507). That principle is applicable here. To require the defendant to eliminate its ditches and culvert would result in little benefit to the plaintiffs, but in great detriment to the defendant and to the public who use the highway. During periods of melting snow or cloudbursts the water would then accumulate on the north side of the highway with no other outlet than over the road and onto plaintiffs ’ land in about the same volume as now flows through the culvert. An equity court is not bound to decree an injunction where it would produce such great public mischief. The court recognizes that the plaintiffs’ legal rights have been invaded but denies injunctive relief because the plaintiffs have not suffered nor been threatened with substantial injury and because the defendant and the public would be greatly harmed thereby. The plaintiffs may bring such other action as they may be advised on account of any injury to their property hereafter occurring.
Both parties have submitted proposed findings of fact. In respect thereto, the court finds 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 of the plaintiffs’ requests and 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 71 and 72 of the defendant’s requests; 11 and 12 of plaintiffs’ requests are refused as are 35, 70 and 73 of the defendant’s requests.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Judgment is directed to be entered hereon, dismissing plaintiffs’ complaint, without costs to either party.