[No. 23602.    Department Two.    January 16, 1933.]

A. F. ANDERSON ESTATE, INC., *Respondent, v.* H. J. HOFFMAN, *as Receiver of Puget Sound Savings & Loan Association, Appellant.*[1]

[1]Reported in 18 P. (2d) 5.

*Caldwell & Lycette* and *Dean H. Eastman,* for appellant.

*Peyser & Bailey,* for respondent.

MAIN, J.—By this action, the plaintiff sought to have a real estate mortgage cancelled and returned to it. The defendant, by cross-complaint, sought a foreclosure of the mortgage. The trial to the court without a jury resulted in a judgment dismissing the cross-complaint, cancelling the mortgage and directing that it be returned to the plaintiff, from which judgment the defendant appeals.

The facts are these: A. F. Anderson died sometime in September, 1923, leaving an estate of considerable size. After his death, his son, Fred A. Anderson, and four daughters, being the only heirs, caused the estate to be incorporated under what is known as the "A. F. Anderson Estate, Inc.," for $1,250,000, the stock being equally divided between the children, with the exception that two of the daughters received one less share than the others in order that there might be issued to their respective husbands one share each, as qualifying shares for the board of trustees. Fred A. Anderson was president and managing officer of the corporation, and Adolph F. Linden, the husband of one of the daughters, was the vice-president. The corporation had large property holdings and a number of business enterprises, and from time to time it was necessary that it borrow considerable sums of money.

Sometime during the forepart of the year 1925, Linden, who was vice-president of the corporation and

also president of the Puget Sound Savings & Loan Association, suggested to Fred A. Anderson that the corporation borrow from the association its needed money, because the association had money on hand which was not being loaned out as fast as they would like to have it. In pursuance of this suggestion, from time to time the corporation borrowed from the association sums of money in substantial amounts, until the advances on August 11, 1925, had reached the sum of $59,000. On this date, the corporation, through its president, turned over to Linden, as president of the association, 288 shares of the capital stock of the Dexter Horton National Bank as a pledge for the advancements which had been received up to that time. For the stock, Linden gave a receipt signed the "Puget Sound Savings & Loan Association," by himself as president thereof.

September 28, 1925, the association advanced to the corporation $3,000 additional, and on this date the corporation signed a note for $62,000, which was secured by a mortgage upon certain real estate owned by the corporation. Prior to the giving of the note and the mortgage, the board of trustees of the corporation had, by resolution, authorized the same. Subsequent to this, the association advanced other money to the corporation, until on January 14, 1926, the total amount aggregated the sum of $89,500. September 29, 1925, or one day after the giving of the note and mortgage, Linden drew and signed a note by A. F. Anderson Estate, Inc., by himself as vice-president, payable to the association, for the sum of $53,320.86. This note was made to cover withdrawals which, prior to that time, had been made by Linden, and which did not go to the Anderson corporation. Linden had neither ex-

press nor implied authority to sign the corporation's name to this note.

The corporation, for reasons not here material, desired to pay off its entire indebtedness to the association, and in order to do this, it was necessary that it borrow money elsewhere. The 288 shares of bank stock were returned to it October 15, 1926, by the state supervisor of savings and loan associations, W. L. Nicely, who had made an examination of the association's affairs and knew something of the conditions therein. This stock was receipted for by the A. F. Anderson Estate, Inc., by Fred A. Anderson, as president. Thereafter, the stock was pledged to a bank in Portland, Oregon, for the purpose of raising money to pay the corporation's indebtedness to the association.

October 20, 1926, the corporation paid its entire indebtedness to the association, including all interest, and took a receipt signed by Nicely, the state supervisor of savings and loan associations. At this time, Fred A. Anderson, acting for the corporation, demanded the return of the $62,000 note and the mortgage which secured the same, but Nicely refused to turn it over to him, stating that it would be held pending the disposition of the $53,320.86 note given by Linden and to which the corporation's name was signed, because Nicely said that was a disputed item. From time to time thereafter, Fred A. Anderson, on behalf of the corporation of which he was president, demanded the return of the note and mortgage, but each time was met by a reply similar to that already indicated.

The matter went along in this way until February 25, 1931, when the present action was brought by the Anderson corporation for the purpose above indicated. After the $62,000 note and mortgage were given, Lin-

den caused the bank stock to be attached to the $53,320.86 note which he had signed without authority, as a pledge for the payment thereof.

In disposing of the action, the trial court did not make formal findings of fact and conclusions of law, but wrote and filed a comprehensive memorandum opinion in which the facts are stated and the evidence reviewed in detail.

It is first contended that, since the stock was endorsed in blank and delivered to Linden, it became a valid pledge as against the unauthorized note which he signed, because the association, it is claimed, would not be charged with the knowledge of the ownership of the stock, since Linden was acting in his own interest.

The note having been signed without authority by Linden, and the corporation not having received the money for which the note was given, it was not a valid obligation of the corporation. *Hoffman v. Gottstein Investment Co.*, 101 Wash. 428, 172 Pac. 573; *Mansfield State Bank v. Leslie Hardware Co.*, 126 Wash. 562, 219 Pac. 15, 222 Pac. 901.

From the evidence, it definitely appears, and the trial court in its memorandum opinion found, that no officer or trustee of the corporation, with the exception of Linden, knew of the $53,320.86 note prior to October 20, 1926, when Fred A. Anderson was informed of its existence by Nicely. The rule which the appellant invokes, to the effect that a corporation will not be charged with notice of facts of which an officer acquires knowledge when acting in a transaction in which he is interested adversely to the corporation, and which is supported by the authorities, is not here applicable. When the stock was first pledged on Au-

gust 11, 1925, it went into the files of the association as security for advancements that had been made up to that time. After this, and subsequent to the giving of the $62,000 mortgage on September 28, 1929, the stock had been transferred in the association's files as security for the unauthorized note. In the memorandum opinion, the trial court made this finding:

"I find the fact to be that the bank stock was pledged to the association on the $59,000 advance and was so received and held by it from August 11, 1925, to September 29, 1925, when wrongfully and illegally Linden pulled this collateral down and attached it to the unauthorized note."

That finding is clearly supported by the evidence, which we shall not here review. When the stock was pledged, it thus appears that it was received by the association, and at that time Linden was not acting in a transaction for himself in which he was interested adversely to the association. The fact that he subsequently, as president, agent or officer of the association, caused the stock to be attached as a pledge to the unauthorized note, does not bring the case within the rule upon which the appellant relies, because, when the stock was first pledged on August 11, 1925, the association was then charged with notice of its ownership.

It is next contended that the corporation is the one that should suffer because it placed it in the power of Linden to make the unauthorized pledge of the note. In support of this contention, the rule is invoked that, when one of two innocent persons must suffer by the acts of another, he who has placed it in the power of that other person to occasion the loss must sustain it. But that rule has no application to the facts in this case. Had Linden, when he first received the stock from the corporation, and before depositing it with the

association, pledged it to secure an obligation of his own, a different question would be presented. Here, however, as appears from what has already been said, the stock, when it was pledged, went into the files of the association, and remained there until it was wrongfully diverted by Linden.

It seems to us that the appellant's argument in support of this contention, as well as the previous one, rests upon the assumption that the stock, in fact, was never delivered to the association as a pledge until Linden attached it to the unauthorized note. This assumption is contrary to the facts as found by the trial court, and which we believe them to be.

Finally, it is contended that the respondent is guilty of laches in not bringing the action at an earlier date than it did. It appears from what has been said that Fred A. Anderson, representing the corporation, from time to time demanded the note and mortgage, and it was refused. The appellant at any time, had it sought to do so, could have brought an action to foreclose. There is nothing in this case to indicate that the association was placed in any worse position by reason of the delay in bringing the action than it would have been had the action been instituted at an earlier date.

Laches is a doctrine of equity. It does not arise from mere lapse of time alone, but arises upon lapse of time together with some intervening change in the condition or relation of the parties adversely affecting the rights of the parties sought to be charged. To constitute laches, there must be not only delay in the assertion of a claim or demand, but some change of condition must have occurred which would make it inequitable to enforce the claim or demand. *State ex rel. Kubel v. Plummer,* 130 Wash. 135, 226 Pac. 273;

*Auve v. Wenzlaff,* 162 Wash. 368, 298 Pac. 686. In the case now before us, there does not appear any fact which would make it inequitable for the respondent to enforce the cancellation and return of its mortgage.

The judgment will be affirmed.

BEALS, C. J., STEINERT, and TOLMAN, JJ., concur.