[No. 39046.  Department Two.  February 21, 1968.]

MERLE ARNOLD et al., Respondents and Cross-appellants, v. A. F. MELANI et al., Appellants.*

*Reported in 437 P.2d 908.

144

*Greenwood, Shiers & Kruse* and *Leonard W. Kruse,* for appellants.

*Sanchez & Martin,* by *James B. Sanchez,* for respondents and cross-appellants.

LAWLESS, J.†—This is an encroachment case in which the appellants, A. F. Melani and his wife (hereinafter called defendants), as to their cross-claim were denied a mandatory injunction.

Bremerton Heights Addition was platted in 1908. In 1930, defendants acquired title to lots 18 and 19 within the plat. The lots were unimproved, uncleared of brush or timber, and not located by stakes or monuments. In 1947, a surveyor, Olin M. Sprague, located corners of adjacent lots and established two monuments. In 1953, a Mr. William M. Davison purchased lots 16 and 17 which are the lots adjacent to the defendants' lots. In 1956, Mr. Davison obtained a building permit to make improvements on a dwelling which had been constructed by his predecessor in title. The controverted improvements occurred in early 1957, extending the house toward defendants' lots. The common line in question is the east side of lot 17 abutting the west side of lot 18.

Later in 1957, defendants came to the area and for the first time saw their lots. Defendants observed Mr. Davison cutting timber at or near the southwest corner of lot 18. In the conversation that ensued, Mr. Davison claimed the area had been surveyed and that it was a part of lot 17. The defendants, at that time, indicated they wished to see the survey.

---

†Judge Lawless is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Before leaving to return to their home in California, the defendants gave their address to a long-time resident of the area, Mrs. Rowan, and asked her to inform them if anything happened in regard to the property. Following the defendants' departure a fence was constructed between lots 17 and 18 by Mr. Davison. In early 1959, Mrs. Rowan wrote to the defendants advising them that Mr. Davison was selling to Mr. Leo Brott, and if defendants wanted to do anything about the property line in question, now would be the time. The defendants took no action and the sale was consummated to Mr. Brott. In March 1961, the Leo Brott estate sold lots 16 and 17 together with the house to respondents, Merle Arnold and Maureen Arnold (hereinafter called plaintiffs).

Approximately five years after their first visit, in November 1962, the defendants returned to their property and hired Mr. Ward C. Muller to obtain a survey of the lots in question. Defendant, Mr. Melani, testified at the trial: "[W]e thought we better get this thing straightened out and we came up with that intention." Mr. Muller determined that the east fence of the plaintiffs encroached upon defendants' lot 18 a distance of 8.4 feet on the north end and 9.7 feet on the south; that the southeast corner of plaintiffs' home extended 3.28 feet onto lot 18 and the northeast corner of the home extended 2 feet over the true line; and that concrete steps at the northeast corner of lot 17 encroached upon lot 18. With this survey in hand, defendants proceeded to tear down the fence. After a heated conversation defendant, Mr. Melani, requested that plaintiffs' house be moved.

The 8-foot variance between the surveys of Mr. Sprague and Mr. Muller resulted from an error in the plat. The plat has lines running parallel, yet the ends of the parallel lines are divided by different distances. Mr. Sprague accepted the distances listed in the plats, whereas Mr. Muller considered them to be erroneous. The trial court accepted Mr. Muller's interpretation. If Mr. Sprague's line had been accepted, that is, the listed distances referred to on the plat,

the fence would have been properly located and the house and steps would have been well within the borders of lots 16 and 17.

The trial court found that the plaintiffs had not acquired title through adverse possession; that the total value of lots 17 and 18 was the sum of $750; that the damage resulting from the loss of use as a result of the encroachment was not more than $125; that the encroachment did not interfere with the use of the remaining property; that the house was worth approximately $10,000 and that the part of the house which encroached could not be removed without causing a substantial destruction of the whole structure.

The trial court ruled that

> the Court does refuse to grant the defendants a mandatory injunction against the plaintiffs requiring the plaintiffs to remove their home or parts thereof, together with their patio, walkway, and steps from the defendants' property and in lieu thereof the Court does grant unto them an easement to maintain said improvements in the present location for so long as the same may continue to exist, and . . . that the defendants be . . . granted a judgment . . . for the sum of $125.00, . . . .

The central question posed by the defendants' assignments of error is whether or not the trial court has a discretionary right to refuse equitable relief, having ruled that plaintiffs' building encroached on the defendants' land, and having ruled that the plaintiffs have not perfected an interest by adverse possession. As an additional basis for the denial of injunctive relief, the plaintiff contends that the equitable principles of "de minimis," "equitable estoppel," or "laches" should apply.

We will briefly review the equitable principles urged by the plaintiff, and the cases cited by both counsel in support of their contentions.

All states hold that a mandatory injunction is a proper remedy for an adjoining landowner to seek for the purpose of compelling the removal of an encroachment. See Annot. 28 A.L.R.2d § 3 at 686 (1953). Many states hold that there are circumstances in which the court can refuse to enjoin

upon the theory that this extraordinary injunctive relief is equitable in nature and " '[i]t is not safe to attempt to lay down any hard and fast rule for the guidance of courts of equity in determining when an injunction should issue.' " *McCann v. Chasm Power Co.,* 211 N.Y. 301, 305, 105 N.E. 416 (1914). See also Annot. 28 A.L.R.2d, *supra,* at 699.

█ Equitable estoppel, estoppel in pais, *Peplinski v. Campbell,* 37 Wn.2d 857, 226 P.2d 211 (1951); estoppel by conduct, *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643 (1947); estoppel by misrepresentation, *Kessinger v. Anderson,* 31 Wn.2d 157, 196 P.2d 289 (1948); *James v. Christ Church Parish,* 29 Wn.2d 103, 185 P.2d 984 (1947), are titles given to an equitable doctrine which in general subscribes to the principle that a man shall not be permitted to deny what he has once solemnly acknowledged, *Harmon v. Hale,* 1 Wash. Terr. 422 (1874), and is more specifically defined as requiring three elements: (1) An admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. *Kessinger v. Anderson, supra; Thomas v. Harlan,* 27 Wn.2d 512, 178 P.2d 965, 170 A.L.R. 1138 (1947). In that the facts of the instant case demonstrate no evidence of an affirmative statement, or act, prior to the construction of the encroachment, we hold, contrary to the contention of the plaintiff, the elements of equitable estoppel have not been established.

█ Laches, while said to be founded on the principle of equitable estoppel, *Crodle v. Dodge,* 99 Wash. 121, 168 Pac. 986 (1917); *Young v. Jones,* 72 Wash. 277, 130 Pac. 90 (1913), is an equitable principle that in a general sense relates to neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. *Lyle v. Haskins,* 24 Wn.2d 883, 168 P.2d 797 (1946); *Edison Oyster Co. v. Pioneer Oyster Co.,* 22 Wn.2d 616, 157 P.2d 302 (1945). It also requires an intervening change of condition, making it inequitable to

enforce the claim. *McKnight v. Basilides,* 19 Wn.2d 391, 143 P.2d 307 (1943); *Anderson Estate, Inc. v. Hoffman,* 171 Wash. 378, 18 P.2d 5 (1933). The doctrine is also derived from the familiar maxim that equity aids the vigilant, not those who slumber on their rights. *Leschner v. Department of Labor & Indus.,* 27 Wn.2d 911, 927, 185 P.2d 113 (1947). The facts in the matter before us could perhaps be said to invoke the doctrine of laches, having in mind that more than the lapse of time must be demonstrated. *Stewart v. Johnston,* 30 Wn.2d 925, 195 P.2d 119 (1948). The defendants, in their conversation with Mr. Davison in 1957, were made aware of the contention that a survey encroached upon their property, and they observed the cutting of trees in the questioned area. Later, upon being advised that the property was to be sold and that they should assert their position, they delayed another 5 years, permitting, without comment, two intervening sales. However, laches, as well as equitable estoppel, when asserted in opposition to the interest of a landowner, must be proved by clear and convincing evidence. Strict application of such a doctrine is required when the effect is to divest men of their estate and land. *See Thomas v. Harlan, supra,* at 518. The trial court, in assessing the circumstances and in making the ultimate inquiry into the balance of justice in sustaining or denying the defense (see *Northern Pac. Ry. v. Boyd,* 177 Fed. 804 (9th Cir. 1910)), chose to avoid a specific finding of laches.

De minimis non curat lex or lex non curat de minimis or "the de minimis rule" is not the substance of this case either. It is certain that the instant case does involve a positive invasion of the land of another, and is something more than a trifle. *See* 15 Am. Jur. *Damages* § 6, n.18 (1938); *Thornely v. Andrews,* 45 Wash. 413, 88 Pac. 757 (1907).

*Gostina v. Ryland,* 116 Wash. 228, 199 Pac. 298 (1921), involved a minor expenditure to remove ivy and a tree. Although not germane to our problem, at 233 of the opinion it is suggested that in the proper setting "acquiescing" as to a nuisance may be a basis for denial of equitable relief.

*Wells v. Parks,* 148 Wash. 328, 268 Pac. 889 (1928), involved a fence of irregular construction not on the true line. The defendant sought to invoke the principle de minimis non curat lex. We commented at 332, in disavowing the application of that doctrine, that an irregular line between city lots "may be a very serious matter . . . as in . . . the erection of a business block or apartment house . . . ." We did not discuss the comparison of the cost of removal in relation to the value of the benefit.

*Thomas v. Harlan, supra,* was tried upon the theory of adverse possession, acquiescence and estoppel. The trial court believed the facts constituted estoppel. We held that acquiescence or estoppel had not been clearly and convincingly established. Further, it was evident in that case, that in constructing a garage, the plaintiff proceeded to build with no knowledge of the location of the property line. We did not discuss the cost of removal in comparison to benefit or damage.

In *Mugaas v. Smith,* 33 Wn.2d 429, 434, 206 P.2d 332, 9 A.L.R.2d 846 (1949), after finding adverse possession for the plaintiff and ordering the defendant's improvements removed, we did not discuss a cost comparison. The court set out facts which would have precluded application of estoppel principles in any event. We said:

> There is no merit in the appellants' claim of estoppel. They do not plead it, nor support it with any apropos authority. It is clear that there was no admission, statement, or act on the part of the respondent which could be construed as inconsistent with her present position. No inquiry was made of her as to the boundary line before the appellants made their purchase. *They were notified as to her claim before doing any work on the strip in question and before setting in place the house which encroaches on that strip.* (Italics ours.)

*Adamec v. McCray,* 63 Wn.2d 217, 219-20, 386 P.2d 427 (1963), involved an encroachment of two pilings for less than the statutory period of adverse possession. In that case we discussed a comparison of cost and benefit and the "doctrine of balancing the equities" and said that "[n]o Washington case can be found in support of the doctrine."

We could have added that no case has been decided requiring the rejection of the doctrine. Nevertheless, the court did, at 220, expressly note that:

> [T]he facts necessary for the application of the doctrine are not present in the instant case; therefore, *we need not now determine whether it should be followed in this state.* (Italics ours.)

*Hart v. Seattle,* 45 Wash. 300, 88 Pac. 205 (1907), is distinguishable on the facts, but, after noting facts which give rise to injunctive relief, we conditionally refused to enjoin, upon the payment of damages. In *Peoples Sav. Bank v. Bufford,* 90 Wash. 204, 209, 155 Pac. 1068 (1916), a house was constructed on the wrong lot by a party found to have been acting in "entire good faith." The plaintiff was required to elect either to take title to a nearby vacant lot owned by defendant or to be reimbursed for taxes it had paid on the improved lot. We held that "it would be inequitable to permit appellant [landowner] to oust respondents [encroacher] . . . ." *Tyree v. Gosa,* 11 Wn.2d 572, 119 P.2d 926 (1941), involved a situation in which the encroacher, after correcting his own survey by 20 feet, and after being warned of a dispute as to a property line, took a chance by constructing two houses on the questioned area. The trial court, in protecting the encroacher, was clearly in error because of the absence of "entire good faith" as required in *Peoples Sav. Bank v. Bufford, supra.* See Annot. 28 A.L.R.2d *supra,* at 679. Although it was unnecessary for the decision, we stated that Const. art. 1, § 16 (amendment 9) was determinative. This section provides: "EMINENT DOMAIN. Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches . . . ." In *Tyree, supra,* at 581, we concluded that upon the basis of this provision "[n]o court has the power to compel the appellant to convey and surrender his property for any other person's private use . . . ."

▮ The rights of landowners existed and were held sacred as against other individuals long before the enactment of this constitutional provision. It is elementary that

"[t]he fundamental maxims of a free government seem to require, that the rights of personal liberty and *private property* should be held sacred." (Italics ours.) *Wilkinson v. Leland,* 27 U.S. (2 Peters) 627, 657, 7 L. Ed. 542 (1829). Eminent domain, the subject matter of Const. art. 1, § 16 (amendment 9), is an inherent power of the sovereign, *State ex rel. Mountain Timber Co. v. Superior Court,* 77 Wash. 585, 137 Pac. 994 (1914), which in no way depends upon the state constitution for its existence. Indeed, a state constitution is a limitation of the power of the governing. The sole purpose of this constitutional provision is to define the limitations placed upon the inherent power of a governing body in dealing with the governed in this regard. *State ex rel. Troy v. Yelle,* 27 Wn.2d 99, 176 P.2d 459, 170 A.L.R. 1425 (1947); *State ex rel. Mountain Timber Co. v. Superior Court, supra,* at 586. There is no reason or purpose in limiting an individual's right of *eminent domain* in that without delegation from the governing body no such right is inherent or existent in an individual. The foregoing becomes even more evident upon consideration that Const. art. 1, § 16 (amendment 9) is simply recognition of amendment 14 to the United States Constitution (due process) together with its judicial interpretation as stated in *Missouri Pac. Ry. v. Nebraska,* 164 U.S. 403, 417, 41 L. Ed. 489, 17 Sup. Ct. 130 (1896):

> The taking *by a State* of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States. (Italics ours.)

To suggest that property rights of an individual (other than protection against the sovereign in regard to eminent domain) are created and protected by Const. art. 1, § 16 (amendment 9) misconstrues its sole purpose. To suggest that such a provision somehow divests a court of equity of the power to refuse a mandatory injunction would necessarily by logical extension likewise prohibit the legislative body from establishing rules of limitation (adverse possession) and further, would bar the passing of title by other

equitable doctrines based upon negative conduct, such as estoppel, waiver, or laches. We hold that the language contained in *Tyree v. Gosa, supra,* regarding Const. art. 1, § 16 (amendment 9) was not required for the opinion.

As thus construed, *Hart v. Seattle, supra, Peoples Sav. Bank v. Bufford, supra,* and *Tyree v. Gosa, supra,* support the premise that a mandatory injunction can be withheld as oppressive when, as here, it appears (and we particularly stress), that: (1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

Ordinarily, even though it is extraordinary relief, a mandatory injunction will issue to compel the removal of an encroaching structure. However, it is not to be issued as a matter of course. We do not deny that a "sacred" right exists in a free society as to the protection of the concept of private property; we simply hold that when an equitable power of the court is invoked, to enforce a right, the court must grant equity in a meaningful manner, not blindly. "There is no question but that equity has a right to step in and prevent the enforcement of a legal right whenever such an enforcement would be inequitable." *Thisius v. Sealander,* 26 Wn.2d 810, 818, 175 P.2d 619 (1946). If this is so, then equity has the right to deny the extraordinary remedy of mandatory injunction. However, in that the relief granted by the denial of the injunction affects a landowner's possessory rights, as do laches and estoppel, and is exceptional relief for the exceptional case, we further require (as was present in this case) that the evidence of the elements listed above be clearly and convincingly proven by the encroacher.

In prior cases the relief herein afforded has been some-

, what incorrectly referred to as a "balancing of equities." This doctrine is rather the judicial recognition of a circumstance in which one party uses a legal right to gain purchase of an equitable club to be used as a weapon of oppression rather than in defense of a right. It is a contradiction of terms to adhere to a rule which requires a court of equity to act oppressively or inequitably and by rote rather than through reason. See *Golden Press Inc. v. Rylands,* 124 Colo. 122, 235 P.2d 592, 28 A.L.R.2d 672 (1951).

The trial court provided for an easement of a 10-foot strip. Considering all the evidence and the necessary interference of a possessory right, we direct that the easement be limited to the area covered by the encroachments and further, that while the encroachments can be repaired, any replacement must be within the lot line as established. The trial court did not order the replacement of the fence or allow damage. We agree.

It should be noted that the $125 allowed for loss of use by the trial court only compensates defendants through the date of the entry of judgment. This opinion denies equitable relief. It does not preclude defendants' right of reasonable compensation for use during each year the encroachment remains in place.

As modified, the judgment is affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., concur.

---

[En Banc. January 9, 1969.]*

PER CURIAM.—This case came on for hearing en banc upon the granting of the respondents' and cross-appellants' petition for a rehearing. We adhere to the departmental opinion filed February 21, 1968, *supra,* subject to the following modifications.

Paragraph 1; commencing with line 4 and ending with line 23 on page 146, is revised as follows:

The trial court found that the plaintiffs had not acquired

*Reported in 449 P.2d 800; 450 P.2d 815.

154

title through adverse possession, that the total value of the lots was $750, and that the value of the 10 feet subject to the encroachments was not more than $125. (The record shows that the value of the house was approximately $10,000.) The trial court further found that the cost of removing the encroachments would far exceed the total value of the defendants' property, and to require the plaintiffs to do so would be inequitable and unconscionable. Judgment was thereupon entered denying the defendants' application for a mandatory injunction, granting the plaintiffs an easement to maintain the improvements in their present location as long as they may continue to exist, and granting the defendants a judgment against the plaintiffs for the sum of $125.

Paragraph 2, commencing with line 10 and ending with line 17 on page 153, is revised as follows:

Considering all the evidence and the necessary interference of a possessory right, we direct that the easement be limited to the area covered by the encroachments and further, that while the encroachments can be repaired, any replacement must be within the lot line as established.

Paragraph 3, commencing with line 18 and ending with line 23 on page 153, is deleted.

It is so ordered.

HILL, J. (dissenting)—On reconsideration of this case, I am satisfied that the trial court and this court are engaged in doing equity where the law should prevail.

A person, by building on the property of another, can neither force the owner of the property to sell his property nor to permit a portion of it to be used for a time—short or long.

We cannot divest temporarily or suspend a legal title because of hardship or because it may seem inequitable that a property owner should insist upon his legal rights.

The opinion is correct in pointing out that neither equitable estoppel, laches nor the de minimis rule affords any relief for Arnold as the trespasser on Melani's property.

The trial court and this court were correct in saying that Melani is not entitled to the equitable remedy of a mandatory injunction to accomplish an inequitable purpose.

That is as far as we should attempt to go; and when the courts (trial and appellate) attempt to carve out an equitable estate of some kind for Arnold so that he can continue in possession of Melani's property, they transcend their function. I dissent from so much of the opinion as seeks to do so.

WEAVER and NEILL, JJ., concur with HILL, J.

\*Reported in 449 P.2d 689.