# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LEVACK FAMILY TRUST, Ellen Levack, Trustee, and ELLEN LEVACK, individually,<br><br>           Appellants,<br><br>      v.<br><br>JOHN H. LEACH and MARILYN D. LEACH, husband and wife,<br><br>           Respondents. | NO. 71431-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 31, 2014 |

COURT OF APPEALS DIV I<br>STATE OF WASHINGTON<br>FILED<br>2014 MAR 31 AM 9: 36

LAU, J. — In this quiet title action involving ownership of a disputed strip of property between neighbors Ellen Levack and John Leach, Levack appeals the court's decision to award her damages in lieu of an injunction ordering Leach to remove walls that encroached on Levack's property. Because substantial evidence supports the trial court's findings under each of the Arnold[1] elements, and because those findings support its conclusions that injunctive relief would be oppressive, we conclude that the court properly exercised its discretion by awarding damages in lieu of an injunction. We affirm.

---

[1] Arnold v. Melani, 75 Wn.2d 143, 449 P.2d 800 (1968).

71431-7-I/2

## FACTS

John Leach, the owner of lot 9 on Mason County's Fawn Lake,[2] built a concrete wall, a rock buttress along the base of the concrete wall, and a cottage block wall that extended from the south end of the concrete wall to a point near the lakeshore. Leach built all three structures on land he believed to be located on his side of a mutually-recognized boundary line, known as the Pipe to Pipe Line, which separated his property from adjacent lot 8, a 50 foot-wide, unimproved lot situated to the east. Construction was completed in 1999. In March 2009, lot 8 owner Levack[3] commissioned a survey that showed the deeded boundary lay to Leach's side of the Pipe to Pipe Line. Subsequent investigation revealed that the concrete wall, rock buttress, and cottage block wall all encroached to varying degrees over the deeded boundary.

In April 2009, Levack sued Leach to quiet title up to the deeded boundary, as revealed by the March 2009 survey. Leach counterclaimed to quiet title up to the Pipe to Pipe Line, based on mutual recognition and acquiescence, location by common grantor, and estoppel in pais. After a bench trial, the court awarded Leach title up to the Pipe to Pipe Line on grounds of adverse possession and mutual recognition and acquiescence. After adjusting the boundary, however, it found that the concrete wall, rock buttress, and cottage block wall still encroached slightly onto Levack's property:

---

[2] John Leach and his wife, Marilyn Leach, purchased lot 9 in 1996. Marilyn Leach was a party to this action but died after its commencement.

[3] The record owner of lot 8 is the Levack Family Trust. Ellen Levack serves as trustee for the Levack Family Trust.

-2-

- A portion of the concrete wall encroached a maximum of 3.5 inches onto lot 8.
- A portion of the concrete wall's buried footing encroached a maximum of 6.5 inches under lot 8.
- A portion of the rock buttress encroached a maximum of 45.5 inches.
- A portion of the cottage block wall encroached a maximum of 20.5 inches.

Levack asked the court for an injunction requiring Leach to remove all three walls. The court declined Levack's request and instead imposed the following remedy:

- Leach must remove the rock buttress.
- Leach may leave in place the concrete wall and the cottage block wall.
- Leach must pay Levack $3,559.72, representing the value of the encroached land and a reimbursement for property taxes paid by Levack.

Levack appeals the court's decision to withhold injunctive relief.

## ANALYSIS

Levack does not challenge the location of the boundary fixed by the trial court. She concedes, "[T]here is sufficient evidence in the record to support the trial court's judgment quieting title up to the Pipe to Pipe line by mutual recognition and acquiescence." Br. of Appellant at 24. She solely challenges the court's decision to award damages in lieu of an injunction mandating removal of the concrete and cottage block walls.[4] For the reasons discussed below, we affirm.

The parties agree that an abuse of discretion standard applies to the trial court's decision to withhold injunctive relief. See Steury v. Johnson, 90 Wn. App. 401, 405, 957 P.2d 772 (1998) ("A suit for an injunction is an equitable proceeding addressed to the sound discretion of the trial court, to be exercised according to the circumstances of

---

[4] Levack assigns error to conclusion of law 11, which states, "Plaintiffs' claims for indemnity are dismissed." We do not review this claim, since Levack failed to address it in her opening brief. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

-3-

each case."). Accordingly, we review the court's decision "to determine whether the remedy is based upon tenable grounds or tenable reasons." Cogdell v. 1999 O'Ravez Family, LLC, 153 Wn. App. 384, 391, 220 P.3d 1259 (2009) (trial court abused its discretion when awarding encroacher an easement without providing any counter-balancing compensation to the injured landowner).

In Arnold v. Melani, 75 Wn.2d 143, 449 P.2d 800 (1968), a house and fence encroached onto an adjacent lot. The trial court awarded damages in lieu of an injunction, reasoning the offending house was worth far more than the land on which it encroached. Arnold, 75 Wn.2d at 145-46. Our Supreme Court upheld the remedy despite the traditional property law rule requiring removal of encroaching structures. It held that a court may refuse to enjoin an encroachment under certain circumstances:

> [A] mandatory injunction can be withheld as oppressive when . . . it appears . . . that: (1) The encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure; (2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

Arnold, 75 Wn.2d at 152. It is now well established that a court asked to eject an encroacher must "reason through the Arnold elements as part of its duty to achieve fairness between the parties." Proctor v. Huntington, 169 Wn.2d 491, 502-03, 238 P.3d 1117 (2010). The threshold inquiry is whether the encroacher proved each element by clear and convincing evidence. Arnold, 75 Wn.2d at 152. If so, the court may exercise its discretion to award damages in lieu of injunctive relief. See, e.g., Hanson v. Estell, 100 Wn. App. 281, 288-89, 997 P.2d 426 (2000) ("Balancing the negligible impact of the barn encroaching on the easement by one foot with the likely prohibitive costs of moving

the barn, the equities support rejection of mandatory injunction, leaving the Estells to their remedy at law."). This approach ensures that injunctive relief will not "mechanically follow from any encroachment." Proctor, 169 Wn.2d at 502.

### First Arnold Element

Levack contends that Leach failed to prove the first Arnold element. As stated above, the first Arnold element requires clear and convincing proof that "[t]he encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure . . . ." Arnold, 75 Wn.2d at 152. On this element, the trial court found:

> 33. The Leaches did not act negligently, recklessly, or intentionally, or "wrongfully" as that term is defined in RCW 4.24.630(1),[5] with respect to the location and construction of the poured concrete wall and cottage block wall, or with respect to the fact that those walls (and the poured wall's footing) extend a few inches past the Pipe to Pipe Line [i.e., the boundary line fixed by the court]. The Leaches were not aware of these encroachments past the Pipe to Pipe Line until after this lawsuit was filed.

Levack assigns error to this finding, contending it does not support the court's decision to withhold injunctive relief.

Levack first contends that finding 33 fails to expressly address whether Leach took a "calculated risk," "act[ed] in bad faith," or "indifferently locate[d] the encroaching structure." Arnold, 75 Wn.2d at 152. Citing In re Welfare of A.B., 168 Wn.2d 908, 232 P.3d 1104 (2010), he argues that the absence of these express findings counts as an

---

[5] RCW 4.24.630(1) provides in part: "Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury." On appeal, neither party raises an issue under this statute.

implicit finding that Leach did take a calculated risk, did act in bad faith, and did indifferently locate the encroaching structure. Br. of Appellant at 32. In A.B., the court noted that "lack of an essential finding is presumed equivalent to a finding against the party with the burden of proof . . . ." A.B., 168 Wn.2d at 927. But it also held that an appellate court reviewing an order terminating parental rights may imply the essential finding of current parental unfitness when the record clearly demonstrates the finding "was actually intended, and thus made, by the trial court." A.B., 168 Wn.2d at 921. The latter holding is consistent with the rule that "[i]nadequate written findings may be supplemented by the trial court's oral decision or statements in the record." Lawrence v. Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001); see also Wallace Real Estate Inv., Inc., v. Groves, 72 Wn. App. 759, 770, 868 P.2d 149 (1994) (oral decision may be used to interpret and explain court's written order, provided no inconsistency arises). These cases demonstrate that the absence of an express finding does not always count as an implicit finding against the party with the burden of proof.

Here, although finding 33 only discusses negligence and the absence of reckless and intentional misconduct, our record shows the court intended the finding to address all criteria within the first Arnold element.[6] The record shows that the court understood and applied the proper legal standard. And it clearly intended to enter findings that addressed each of what it called the "Arnold factors." Under these circumstances, we treat as an implicit trial court finding that under the first Arnold element, Leach did not take a calculated risk, did not act in bad faith, and did not indifferently locate the walls.

---

[6] We specifically note the trial court's April 25, 2012 oral ruling, particularly at Clerk's Papers (CP) at 156, and its written conclusion of law 7, CP at 18-19.

The next issue is whether substantial evidence supports the court's express and implicit findings under the first Arnold element. See Sunnyside Valley Irrigation Dist. v. Dickie, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002) ("When findings of fact and conclusions of law are entered following a bench trial, appellate review is limited to determining whether the findings are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions of law and judgment.").

Because Arnold requires clear and convincing proof, we require "'highly probable'" substantial evidence. In re Marriage of Schweitzer, 132 Wn.2d 318, 329, 937 P.2d 1062 (1997) (quoting In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)). Notwithstanding this relatively exacting standard, the appellant must "present argument to the court why specific findings of fact are not supported by the evidence" and "cite to the record to support that argument." Inland Foundry Co. v. Dep't of Labor & Indus., 106 Wn. App. 333, 340, 24 P.3d 424 (2001); see also Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wn.2d 364, 369, 798 P.2d 799 (1990) (appellate courts presume propriety of trial court's findings). Unchallenged or inadequately challenged findings become verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992); Inland Foundry, 106 Wn. App. at 340.

The court expressly found that Leach did not negligently or intentionally construct the walls on Levack's property. As discussed above, it implicitly found he did not take a calculated risk, act in bad faith, or indifferently locate the walls. Levack has the burden to explain why these findings were not supported by substantial evidence. Our review of her briefing shows she challenges only (1) the court's express finding that Leach "did not act negligently . . . with respect to the location and construction of the poured

-7-

concrete wall and cottage block wall, or with respect to the fact that those walls (and the poured wall's footing) extend a few inches past the Pipe to Pipe Line" and (2) its implicit finding that Leach did not indifferently locate the walls.

Levack first claims substantial evidence did not support the court's express finding that Leach did not negligently locate the concrete and cottage block walls. Without citing the record, she argues Leach acted negligently in failing to obtain necessary building permits for those walls. This argument is misplaced because, under the first Arnold element, whether Leach possessed building permits is immaterial to the pivotal question of whether he negligently located the walls.

In any event, the record adequately supports the court's finding that Leach did not negligently locate the concrete and cottage block walls. A key undisputed fact is that Leach did not learn that the concrete and cottage block walls encroached over the Pipe to Pipe Line (i.e., the mutually-recognized boundary) until that information was revealed to him at trial. The following unchallenged findings are verities on appeal:

21. Up until March 2009, when Ellen Levack obtained a survey of Lot 8 from Holman & Associates, the poured concrete wall, cottage block wall, and rock buttress remained in place. During that time both the Leaches and the Levacks treated the edge of the poured wall and cottage block wall as defining the boundary between Lot 8 and Lot 9; i.e., that the edges of those walls were right at the boundary line.

. . . .

23. The March 2009 survey . . . did not show whether the poured concrete wall or cottage block wall extended past the Pipe to Pipe Line onto Lot 8.

. . . .

25. In late March or early April 2009, Ellen Levack communicated the March 2009 survey results to John Leach. This was the Leaches' first notice that the Pipe to Pipe Line did not match the deeded boundary line.

26. Ellen Levack . . . filed this lawsuit on April 7, 2009.

. . . .

30. Subsequent analysis by Mr. Holman showed that (a) a portion of the face of the poured concrete wall extended a maximum of about 3.5 inches past the

Pipe to Pipe Line, with the buried footing of the wall extending another 3 inches further under Lot 8, (b) a portion of the face of the cottage block wall extended a maximum of about 20.5 inches past that line, and (c) a portion of the rock buttress extended a maximum of 3 feet 9.5 inches past that line. This information was not presented on the March 2009 survey map, and was revealed for the first time during trial. This was the first time that Leach was put on notice that any portion of the poured concrete wall or cottage block wall extended past the Pipe to Pipe Line.

(Emphasis added.) The court's undisputed findings show Leach constructed the concrete and cottage block walls on land he reasonably believed to be his own, long before he learned that the Pipe to Pipe Line was not the true (deeded) boundary. Substantial evidence thus supports the court's determination that Leach "did not act negligently . . . with respect to the location and construction of the poured concrete wall and cottage block wall, or with respect to the fact that those walls (and the poured wall's footing) extend a few inches past the Pipe to Pipe Line."

Levack next claims substantial evidence did not support the court's implicit finding that Leach did not indifferently locate the concrete and cottage block walls. Without citing the record, she claims the record shows Leach "abdicat[ed]" responsibility for the location of the walls to his contractor. Br. of Appellant at 32. The implication of this unsupported claim is that Leach permitted his contractor to build the concrete and cottage block walls without any concern by either party for the boundary line. Substantial evidence supports the court's contrary finding. The following unchallenged findings, which are verities on appeal, provide substantial evidence that Leach and his contractor recognized and respected the Pipe to Pipe Line boundary:

16. Beginning in 1998, the Leaches moved forward with design and planning for construction of a residence on Lot 9, and in doing so relied on the Pipe to Pipe Line as being the property boundary. The Leaches contracted with Evergreen Builders, a business operated by John Reidel, to build the

residence and construct the various related improvements to Lot 9. During construction, the Leaches lived in Federal Way and were only at Lot 9 on a sporadic basis.

17. Clearing, grading, and excavation for the Leach construction project began no later than November 1998. . . . This excavation and grading work included that needed for placement of the footings for a poured concrete retaining wall that was to be located up against the Pipe to Pipe Line. . . .

. . . .

20. Within months after the poured concrete wall was complete, the Leaches installed a shorter (lower) cottage block wall that ran more or less from the south end of the poured concrete wall down to a point near the edge of Fawn Lake. The Leaches placed this wall so as to follow and abut the Pipe to Pipe Line.

(Emphasis added.) These unchallenged findings provide substantial evidence that

Leach did not "indifferently locate" the concrete and cottage block walls. Arnold, 75

Wn.2d at 152. We conclude the trial court properly found that Leach proved the first

Arnold element by clear and convincing evidence.

Remaining Arnold Elements

Under Arnold, the party seeking to avoid an injunction must also prove:

(2) the damage to the landowner was slight and the benefit of removal equally small; (3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

Arnold, 75 Wn.2d at 152. As discussed above, the court analyzed these elements and

expressly or implicitly found that Leach proved each by clear and convincing evidence.

Levack contends the court's findings were not supported by substantial evidence.

Levack first contends substantial evidence did not support the court's implicit

finding that "(2) the damage [caused by the encroachment] to the landowner was slight

and the benefit of removal equally small." Arnold, 75 Wn.2d at 152. Contrary to her

argument, substantial evidence supports this finding.

-10-

In Proctor, our Supreme Court addressed Arnold's requirement that damage to the landowner be "slight." The court held that an encroachment of an acre was "slight" because the acre, though sizeable in absolute terms, comprised only 3.3 percent of the encroached lot. Proctor, 169 Wn.2d at 502. The court relied in part on People's Savings Bank v. Bufford, 90 Wn. 204, 155 P. 1068 (1916), in which the court, sitting in equity, declined to eject encroachers who occupied a landowner's entire lot. In light of Proctor, substantial evidence amply supports the court's finding that the damage to Levack was slight and the benefit of removal equally minor. As noted above, it is undisputed that a portion of the concrete wall encroached a maximum of 3.5 inches onto Levack's 50 foot-wide lot, that a portion of the buried footing encroached a maximum of 6.5 inches, and that a portion of the cottage block wall encroached a maximum of 20.5 inches. Substantial evidence thus shows the encroachments were slight in both absolute and relative terms. See Hanson, 100 Wn. App. at 288-89 (for purposes of Arnold, impact of barn that encroached on easement by one foot was "negligible").

Citing the testimony of Rick Wells, a licensed real estate appraiser, Levack claims that "the presence of walls has diminished value of Levack property by 30 to 35 percent or by $35,500 to $42,000." Br. of Appellant at 34. This assertion is misleading. Wells calculated diminishment in value under the assumption that the deeded boundary remained viable. He acknowledged his calculation did not account for the possibility of a redrawn boundary based on mutual recognition and acquiescence:

Q. So when it's all said and done, you haven't made an assessment of the loss in value to Mrs. Levack if the boundary line were redrawn by the Court along her side of the encroachments, such that they're no longer encroaching on her property, right?

A. Not specifically, no.

Report of Proceedings (RP) (Feb. 2, 2012) at 964. Because Wells relied on the deeded boundary, the above-quoted calculations are irrelevant.

Levack next contends substantial evidence did not support the court's implicit finding that "(3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use . . . ." Arnold, 75 Wn.2d at 152. The trial court expressly found, "The encroachments of the poured concrete wall face and footing and the cottage block wall face past the Pipe to Pipe Line do not have any material impact on the value or use of Lot 8; the impacts are de minimis at best." Substantial evidence supports this finding. Jef Conklin, a real estate broker with experience selling waterfront property in Mason County, opined that even if all encroachments remained, he would be "happy" to market Levack's unimproved lot as a property capable of supporting a reasonable house with a lake view:

Q. . . . And have you been able to ascertain a view impact based on the probable location of a house on Lot 8 if these encroachments were to remain and the boundary line were to be redrawn to narrow the lot a little and leave the encroachments on what would then be the Leach property?

A. I don't think it impacts view whatsoever.

. . . .

Q. If the Judge were to redraw—at the end of this process, redraw the boundary line to basically move [it] over towards Levack and put the concrete wall and the cottage block wall on the Leach property, thereby narrowing down a little bit the Levack property on Lot 8, would you have any hesitation in terms of listing it and trying to sell it?

A. No, happy to do it.

Q. What if the rock wall is still there?

A. And it becomes the line?

Q. Yeah.

-12-

A. I'd still list it. It's still developable.

RP (Jan. 31, 2012) at 848-49. He added that, on average, comparable lots supported 1,350 square foot houses. Regarding Levack's lot, he testified, "I still think the reality is that we could put a 2000 square foot structure on that lot." RP (Jan. 31, 2012) at 840. He summarized, "I don't think there is significant impact to developability because we can still build a house of ample size for the neighborhood." RP (Jan. 31, 2012) at 841.

Levack claims, "Mason County would forbid [her] from performing any excavation on her property for a distance equal to the height of the wall." Br. of Appellant at 34. Engineer James Ashley-Cole testified he "wouldn't excavate within 4 [feet]" of the rock buttress. RP (Jan. 25, 2012) at 154. But the court ordered Leach to remove the rock buttress, and Ashley-Cole gave no similar testimony regarding the concrete wall. Further, Ashley-Cole noted, "That would be a rule of thumb." RP (Jan. 25, 2012) at 154. He did not claim that as a matter of code enforcement, Mason County would definitely "forbid" excavation near any of the walls. Wells similarly testified that the owner of lot 8 might want to avoid construction within eight feet of the concrete wall. He explained, "Do I want to build a house any closer than 8 [feet] to this structure because if it fell down, you know, I don't want it falling on my house." RP (Feb. 2, 2012) at 927. But he offered no evidence that collapse was imminent or even likely. He also offered no evidence that Mason County planned to forbid excavation near the wall. He testified, "I don't know that the County really cares whether you build [a house] right immediately next to the wall or not, because . . . I'm not an expert on building codes." RP (Feb. 2, 2012) at 925.

Levack next contends substantial evidence did not support the court's implicit finding that "(4) it is impractical to move the structure as built . . . ." Arnold, 75 Wn.2d at 152. The court expressly found:

> 35. The impact to Leach if the court were to order removal of all encroachments past the Pipe to Pipe Line would be significant. Removal of such encroachments would require removal of the rock buttress, poured concrete wall, and the cottage block wall, an effort which would cost approximately $40,000, and perhaps much more. The removal would also risk damage to the Leach residence and its foundation, and risk injury to Lot 8 as well. Moving the poured concrete wall would be impractical regardless of whether or not the rock buttress remains in place or is moved.

Without citing the record, Levack first argues this criterion is irrelevant because the walls violate Mason County regulations and, therefore, must be removed regardless of cost or difficulty. She explains, "Because the County has effectively required Leach to remove the walls, as a matter of law, the Court erred in finding it was 'impracticable' for Leach to do so." Br. of Appellant at 36. This claim fails because Levack speculates on whether the county will require Leach to remove the walls.

Levack also argues, without citation to the record, that "Leach could easily remove the cottage blocks, perform the necessary excavation, and replace the blocks at the setback." Br. of Appellant at 36. The record does not support this argument. Engineer Jayne Nelson testified it would cost approximately $8,700 to relocate the cottage block wall. RP (Jan. 31, 2012) at 779. Levack also challenges the court's finding that removal of all three walls would cost approximately $40,000. Leach submitted evidence that removal of the concrete wall alone could cost as much as $61,000. RP (Jan. 31, 2012) at 778-79. Nelson explained, "[I]t's difficult because it's a tight site." RP (Jan. 31, 2012) at 775. Finally, Levack challenges the court's finding that

"removal would also risk damage to the Leach residence and its foundation, and risk injury to Lot 8 as well." Nelson testified:

> First of all the old wall would have to be demolished and the old backfill would have to be removed in order to do this. . . . You need to have some care as you remove that existing backfill so that you don't destabilize his existing garage, and that you have safety for the workers as they work on this retaining wall.

RP (Jan. 31, 2012) at 774-75. The court's findings were adequately supported.

Levack also contends substantial evidence did not support the court's implicit finding that "(5) there is an enormous disparity in resulting hardships." Arnold, 75 Wn.2d at 152. The trial court is in the best position to balance the equities, and its determination is entitled to deference on appeal. See Farmer v. Farmer, 172 Wn.2d 616, 634, 259 P.3d 256 (2011) (recognizing Supreme Court's "tradition of deference to the exercise of a trial court's equitable authority . . . ."). We decline to substitute our judgment for that of the trial court. The walls encroached a maximum of 20.5 inches onto Levack's 50-foot unimproved lot. The concrete wall encroached a maximum of 3.5 inches above ground. Finally, removal would be costly and difficult. On these facts, the trial court did not abuse its discretion in determining that the equities favored Leach.

### Relevance of Mason County Ordinances and Fawn Lake Covenants

Levack contends, "The trial court should have considered whether Mason County would require Leach to remove the walls." Br. of Appellant at 27. She argues, without citing the record, that following completion of this lawsuit, Mason County will order Levack to tear down all three walls for failure to obtain building permits. She asserts Leach will not be able to obtain building permits even if he applies, because he knowingly violated setback requirements under the county's zoning and shoreline

-15-

master program regulations and under restrictive covenants promulgated by the Fawn Lake Maintenance Commission. Finally, she claims the walls must be removed due to substandard construction, as defined by the county's development regulations:

> [T]he eight-foot-tall concrete retaining wall is only eight-inches-wide, rather than the twelve inches that Mason County would have required. The wall was not properly reinforced with steel. The wall was improperly installed "on grade," rather than being properly embedded in native soils. There are no footing drains. The soils behind the wall were not properly backfilled.
>
> As a result of the defects in its construction, the concrete wall had developed cracks, and is failing.

Br. of Appellant at 25 (citations omitted).

Leach does not dispute that he obtained no building permits for the concrete and cottage block walls. He also does not argue that the walls meet all of Mason County's development regulations. He acknowledges that the concrete wall "has some cracks and is not up to code . . . ." Resp't's Br. at 36. But as noted above, the assertion that Mason County plans to order removal on this basis is speculative. Likewise, the record contains no evidence of enforcement or planned enforcement by the Fawn Lake Maintenance Commission.

Levack emphasizes that Mason County issued Leach a "Correction Notice" on December 2, 2010. The handwritten portion of the notice—issued nearly a year and eight months after Levack filed her complaint—alleged a permitting violation:

> Retaining wall system was constructed without a building permit or approval. Obtain a permit within 21-days OR remove.
> NOT APPROVED FOR USE.
> Failure to make arrangements to resolve will result in additional enforcement actions including recording nonconformance activities against the affected parcels.

-16-

Ex. 17. The notice claimed failure to obtain a permit or remove the structure "will result in additional enforcement actions . . . ." Ex. 17. But county building inspector Debbera Coker testified at trial, "[W]e still are waiting for the civil action to be resolved before the permitting would be necessary." RP (Jan. 25, 2012) at 229. She confirmed that, as of trial, the county had not yet taken any enforcement action against Leach.

Levack faults the trial court for failing to consider the interests of Mason County and the Fawn Lake Maintenance Commission. But even if the court affirmatively found that Leach violated various permitting obligations, setback requirements, and construction regulations, Arnold permits the trial court to award damages in lieu of an injunction. Levack proposes that Arnold might not apply when a landowner knowingly violates a development regulation or restrictive covenant—i.e., that such violations automatically warrant injunctive relief. She cites no controlling authority, and her reliance on Larsen v. Town of Colton, 94 Wn. App. 383, 973 P.2d 1066 (1999), and Radach v. Gunderson, 39 Wn. App. 392, 695 P.2d 128 (1985), is misplaced. Larsen and Radach merely held that injunctive relief may be appropriate when a private landowner sues another landowner to enforce a municipal zoning provision. See Larsen, 94 Wn. App. at 391 (citing Radach for the proposition that "[a]n action for injunctive relief is an appropriate way for an aggrieved property owner to contest erection of a structure he believes to be in violation of a zoning ordinance."). Radach cited Arnold for the proposition that "in certain instances, courts should refuse equitable remedies where legal rights have been violated." Radach, 39 Wn. App. at 398. In sum, even if we accept each of Levack's allegations regarding code and covenant violations, Levack cannot show she was "entitled" to injunctive relief. Br. of Appellant at 27.

Levack also alleges that the walls violated Mason County shoreline master program use regulations. This assertion fails. "Either a private citizen or a governmental entity may base an action for damages on the SMA [Shoreline Management Act], RCW 90.58.230, but only a governmental entity may base an action for injunctive or declaratory relief on the SMA." Hedlund v. White, 67 Wn. App. 409, 414, 836 P.2d 250 (1992) (footnote omitted). Thus, even if we assume Leach violated the Shoreline Management Act (SMA), the trial court lacked authority to award injunctive relief premised on an SMA violation.

Expert Testimony

Conklin, the real estate broker who testified about the marketability of Levack's unimproved lot, also opined that the concrete and cottage block walls damaged Levack's property by a factor of $2 per square foot, for a total impact of $1,090. RP (Jan. 31, 2012) at 842. Levack argues that the trial court's admission of this testimony was an abuse of discretion since real estate brokers are not licensed to give appraisals.[7] Even if the trial court improperly allowed Conklin's valuation testimony, the error was harmless because the court ultimately rejected the testimony. It instead credited the testimony of Levack's expert witness, Rick Wells, who calculated that Leach's walls damaged Levack by a factor of $2,200 per linear foot ("front foot") of encroached lakefront. RP (Feb. 2, 2012) at 936. Its unchallenged finding states:

---

[7] Under RCW 18.140.020(6), a real estate broker may give a "brokers price opinion" in a legal proceeding, provided he or she testifies, in substance, that the price opinion is not an appraisal. Levack contends Conklin failed to give a proper disclaimer. But Conklin testified that, although he had been trained as an appraiser, he was "not licensed as one." RP (Jan. 31, 2012) at 826. He added, "I'm simply offering my opinion as a licensed broker, not as a licensed appraiser." RP (Jan. 31, 2012) at 827. Levack does not explain what was missing from Conklin's disclaimer.

-18-

32. As measured from the Pipe to Pipe Line, the maximum encroachment onto Lot 8 is approximately 20.5 inches, not including the rock buttress. Applying the $2,200 per front foot value, and assuming that the 20.5 inch encroachment can be considered to impact Lot 8 all the way down to the edge of Fawn Lake, this results in a value of $3,000 for property impaired by the encroachments—not including the rock buttress—that extend beyond the Pipe to Pipe Line.

Because Conklin's valuation testimony ultimately had no effect on the court's damages calculation, Levack demonstrated no error.

## CONCLUSION

Because substantial evidence supports the trial court's findings under each of the Arnold elements, and because those findings support its conclusion that injunctive relief would be oppressive, we conclude that the court properly exercised its discretion by awarding damages in lieu of an injunction. We affirm.

WE CONCUR:

-19-