IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RICARDO G. GARCIA and LUZ C. GARCIA, husband and wife, | ) ) ) | No. 34189-5-III |
| Appellant, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| TED HENLEY and AUDEAN HENLEY, individually and the marital community of them composed, | ) ) ) ) | |
| Respondent. | ) ) ) | |

KORSMO, J. — The trial court denied the request of Luz and Ricardo Garcia to eject a fence their neighbors, Audean and Ted Henley, had built six inches on to the Garcia property. Dissatisfied with the $500 damage award, the Garcias appeal to this court. Concluding that the trial court acted within its discretion in designing a remedy, we affirm.

FACTS

With each succeeding repair or replacement of the fence between their respective properties, the Henleys moved it further and further on to the Garcia property. A chain link fence, in place long before either the Henleys (1985) or the Garcias (1991) purchased

their properties, was believed to mark the boundary line. The trial court ultimately found that it, too, had always been located on the Garcia property.

The next significant intrusion onto the Garcia property came in 1997 when the Henleys replaced the final 67 feet of the eastern end of the chain link fence with a wooden fence supported by metal poles. This adjustment occurred while the Garcias were out of the country. Upon their return, they protested the intrusion, but no legal action was taken.

However, when the next revision to the fence line occurred in 2011, the Garcias responded with the current action to eject the Henley fence and to recover damages for trespass. The Henleys testified that they believed they were replacing the fence in the same location it already stood. The trial court found that in replacing the eastern portion of the fence in 2011, the new location intruded an additional six inches on to the property over the final 67 feet, resulting in the Henleys encroaching on an additional 33.5 square feet of Garcia property.

At the ensuing trial, the court found that the Garcias had established the elements of their ejectment claim for the 2011 encroachment. The court also determined that the most significant intrusions had occurred long before the 2011 action, resulting in the Henleys gaining all land down to the fence line by adverse possession. Noting that the Garcias otherwise were entitled to an injunction, the trial court recognized pursuant to *Proctor v. Huntington*, 169 Wn.2d 491, 238 P.3d 1117 (2010), that equitable principles

2

sometimes dictated a different remedy. Believing that this case was an appropriate one to consider an alternative remedy, the trial court decided that the fence should remain in its current location and title to the land be granted to the Henleys. The court ordered them to pay the Garcias $500 for the value of the additional 33.5 square feet taken by the 2011 revision.

The Henleys were also ordered to pay all taxes associated with the corrected boundary lines, have survey markers installed, and both parties were directed to cooperate in signing all forms and documents necessary to carry out a boundary line adjustment.

After judgment was entered, the Garcias timely appealed to this court. A panel considered the matter without argument.

## ANALYSIS

The Garcias argue that the trial court did not properly consider the governing equitable factors, resulting in a failure to enforce their property rights. Their argument reads too much into the governing cases.

The decision to eject a trespasser is an equitable remedy. *Arnold v. Melani*, 75 Wn.2d 143, 152, 449 P.2d 800 (1968). Similarly, the decision not to eject a trespasser is also equitable in nature. *Id.* The goal of a court acting in equity is to do substantial justice and end litigation. *Carpenter v. Folkerts*, 29 Wn. App. 73, 78, 627 P.2d 559 (1981). A trial judge has broad discretionary powers to achieve those ends. *In re*

3

*Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). The judge's equitable decision is therefore reviewed for abuse of discretion. *Id.* Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The governing cases are *Arnold* and *Proctor*. *Arnold* involved a situation where the plaintiff's house and fence intruded two- to eight-feet on to their neighbors' property. 75 Wn.2d at 145-146. The defendants removed the fence and demanded that the plaintiffs remove the house. Finding no adverse possession had occurred and that value of the loss of use of the land to the plaintiffs was no more than $125, the trial court declined to enjoin the encroachment or require removal of the home. *Id.* at 153-154. It granted the defendants an easement for the encroaching portions of the house. *Id.* at 154. The question presented was whether the trial court had the discretion to refuse to grant the plaintiffs equitable relief. *Id.* After considering and rejecting other equitable theories of relief, the court finally turned to the injunction issue.

Upon reviewing three of its older cases, the *Arnold* court noted that it was particularly appropriate to withhold a mandatory injunction as oppressive when (1) the encroacher did not act in bad faith or take a calculated risk to locate the encroaching structure, (2) the damage to the landowner was slight and the benefit of removal equally small, (3) there was ample remaining room for a suitable structure and no limitation was

4

imposed on the land's future use, (4) it was impractical to remove the structure as built, and (5) there is an enormous disparity in resulting hardships. *Id.* at 152.

> Ordinarily, even though it is extraordinary relief, a mandatory injunction will issue to compel the removal of an encroaching structure. However, it is not to be issued as a matter of course. We do not deny that a "sacred" right exists in a free society as to the protection of the concept of private property; we simply hold that when an equitable power of the court is invoked, to enforce a right, the court must grant equity in a meaningful manner, not blindly.

*Id.* The court then concluded that the trial judge had correctly declined to order the removal of the home. *Id.* at 154.

*Proctor* revisited *Arnold* and provided a detailed history of encroachment actions in Washington. Washington initially followed the "property rules" concept in encroachment cases, an approach that gave the landowner an absolute right to eject encroachers. 169 Wn.2d at 497. In time, however, Washington also recognized the "liability rules" approach that granted damages in exchange for property rights. *Id.* at 497-499. *Proctor* noted that *Arnold* represented Washington's first attempt to reconcile the two approaches. *Id.* at 499-500.

*Proctor* involved a house built one acre onto the plaintiff's rural property due to joint confusion concerning the meaning of a boundary marker. *Id.* at 494. Eight years later the plaintiff noted the intrusion while having the boundary lines clarified due to a dispute with another neighbor. After negotiations to amend the boundary lines failed, the plaintiff sued to eject the defendants from his land. *Id.* at 494-495. The trial court

5

declined to eject the defendants, finding that the acre of land was worth $25,000 and that moving the house elsewhere would cost $300,000. The court ordered the plaintiff to sell the acre to the defendants for $25,000. *Id.* at 495. Both parties appealed, with the plaintiff arguing that he was entitled to the injunction because the intrusion on to his property was not "slight." *Id.* at 495-496.

Reviewing *Arnold* and its older decision in *Bank v. Bufford*, 90 Wash. 204, 155 P. 1068 (1916), the *Proctor* court stated that *Arnold* had "settled the point" that "liability rules" were permissible. *Id.* at 499. *Proctor* read *Arnold* as based in the trial court's general equity power and that the test was more than a balancing of equities. Instead, it was "concerned with the reasoned use of injunctive relief only when an absolute property rule is appropriate." *Id.* at 500. Reviewing the case in light of the *Arnold* factors, the decision to deny an injunction was upheld. *Id.* at 501-504. Acknowledging that the acre-sized encroachment was not slight, the *Proctor* majority nonetheless recognized the issue "was not the key question before the trial court. The question was whether, in equity, it would be fair and just to require the Huntingtons to remove their entire house" due to a mutual "good-faith surveying mistake." *Id.* at 503. In the big picture, the trial court was permitted to view the costs to the plaintiff as minimal, while the costs to the defendant were great. *Id.* at 503-504. Recognizing the "evolution of property law," the court affirmed the trial court. *Id.* at 504. The dissenters would have treated the *Arnold* test as

6

an absolute threshold a party seeking to avoid ejectment must meet. *Id.* at 504-505 (Sanders, J., dissenting).

With these considerations as background, it is time to consider the arguments raised by the Garcias. They argue that the trial court failed to find the five *Arnold* factors on the record and that the evidence did support implied findings for any of the factors. We disagree with their contentions.

First, there is no support in the case law for requiring a trial court to enter *Arnold* factors on the record. It certainly did not happen in *Arnold* itself, and it is unclear on the face of the *Proctor* opinion whether or not the trial court made record findings on the *Arnold* factors. Since neither party called *Arnold* or *Proctor* to the trial court's decision in its trial briefing, they are not in a position to complain about lack of record findings on the five factors. The Garcias mentioned *Proctor* in their rebuttal argument, claiming that the Henleys took a calculated risk in moving the fence. The trial judge discussed the *Proctor* decision in its letter opinion, further indicating the court's awareness of the issues. On this record, we do not believe the trial judge can be faulted. If the parties had considered *Arnold* important, they would have tried the case from that perspective.

Nonetheless, the record evidence does support finding the presence of the *Arnold* factors. First, the Henleys did not necessarily take a calculated risk in moving the fence. Mr. Henley testified that he thought he was putting up the replacement fence in the same location. Second, the determination that the damage to the Garcias was slight is amply

7

supported in the trial record. The court found that only a six inch encroachment occurred over the final 67 feet. That small figure also easily satisfied the third *Arnold* factor—there was still ample room on the property for other structures.

The fourth factor also could be found by the trial judge. This *Arnold* factor looks at whether or not a structure can be moved "as built." *Arnold*, 75 Wn.2d at 152. A fence, of course, cannot be moved "as built," but must be unassembled and moved. Semantic points aside, however, it certainly would be possible to move the fence. This factor does not weigh heavily in the calculus.

The final factor is whether there is an enormous disparity of the resulting hardships. Although the adjective "enormous" likely does not apply here, the hardship disparity favors the Henleys. Working only on weekends, Mr. Henley took a month to replace the damaged section of fence. In contrast, the damages for the loss of the land totaled only $500, and the Henleys would have the additional expenses of conforming the legal description of the property to the actual fence line. In contrast, the Garcias would lose six inches of apparently unused property.

On balance, all of the factors favor the Henleys to varying degrees. The Garcias, advancing arguments similar to the *Proctor* dissenters, essentially read the *Arnold* factors as a significant limitation on a trial judge's equitable authority to refuse to enjoin encroaching neighbors. However, the *Proctor* majority rejected that interpretation, reasoning that the *Arnold* factors were more of a focusing mechanism that had

8

application only in those situations where a "property rules" approach might otherwise be applicable. 169 Wn.2d at 500-501. Indeed, even the appellants in *Proctor* believed that the *Arnold* factors did not justify injunctive relief in the situation where the encroachment was slight. *Id.* at 502. The position the Garcias advance here is more rigid than that proposed—and rejected—in *Proctor*. As in that case, the trial judge did not err in refusing to enjoin the Henleys and eject the fence.

Accordingly, the trial court did not err in applying a "liability rule" approach instead of the "property rule" approach advocated by the Garcias. Moreover, the resulting decision was not an abuse of discretion. The trial court's equitable decision here took into account the entire changes in the boundary line rather than simply the changes engendered by the 2011 replacement of the eastern edge of the fence. By the time an action was finally filed following the 2011 repairs, the court was facing a *fait accompli*. The major variance between the property line and the fence line had been in place for years, resulting in the Henleys (and their predecessors in interest) having acquired title to that strip of land by adverse possession. The last major change to the boundary occurred with the 1997 incursion that the Garcias did not challenge in court. Title to that land, too, passed to the Henleys by adverse possession several years prior to the 2011 action. Accordingly, the trial court understandably believed there was need to adjust the boundaries to account for the land acquired by adverse possession.

9

On top of those changes, not formally recognized until the present case was concluded, there was the additional six inches of land taken by the 2011 fence replacement. That *de minimis* amount of land had no special economic significance to either the Garcias or to the Henleys. Understandably, moving the fence back six inches made little sense at this point. Instead, the trial court looked at the entire picture and came up with a comprehensive solution designed to fix the situation once and for all. The boundary would be legally adjusted, at the expense of the Henleys, to recognize the new property description, which the Henleys had to have marked by a surveyor rather than by their measurably imprecise fencing practices.[1] The formal adjustment would save the Garcias some tax assessments in the future and place those costs on the property that gained from the adjustment. The Garcias would be paid a token sum for the loss of the six inches.

Since the vast majority of the property taken by the Henleys (and their predecessors) could no longer be recovered by the Garcias, the outcome was about as good as the Garcias could hope. They would gain little or nothing from having the fence moved six inches back, but they did stand to gain some relief in the future when the adjusted boundaries were

---

[1] The Garcias ask this court to order the Henleys to formalize the boundary line adjustment. We believe the judgment already does so, although the pendency of this appeal might understandably prevent the parties from acting on it. Clerk's Papers at 78. If the Henleys fail to adjust the boundary, the Garcias are in a position to enforce the judgment. If the Henleys believe a formal adjustment is not contemplated by the ruling, they could seek clarification from the trial court.

10

officially recognized by the taxing authorities. The damages, minimal though they may be,

recognized the righteousness of their position. The boundary adjustment created certainty

for the future when the current owners eventually seek to sell their respective properties.

The result here was about as win-win as could happen given the circumstances

facing the trial court. The trial judge exercised his discretion on very tenable grounds and

did not abuse the significant discretion accorded him.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Siddoway, J.

No. 34189-5-III

FEARING, C.J. (dissenting in part) — This appeal tests the nature of appellate review. The majority and I agree that an appellate court should defer to factual evaluations of the trial court. Our disagreement lies in the steps a trial court must adopt before a reviewing court defers to those evaluations and specifically whether written findings relevant to the *Arnold v. Melani*, 75 Wn.2d 143, 449 P.2d 800 (1968) encroachment factors are required. Our trial court's findings of fact and memorandum opinion do not address those factors. I would remand the case to the trial court for entry of findings of fact and a further hearing in the event the court deems additional evidence is needed to enter sufficient findings. To the extent that the majority affirms the trial court's ruling without entry of additional findings, I dissent.

Ricardo and Luz Garcia sue neighbors Ted and Audean Henley because, in 2011, the Henleys situated a fence further south on the Garcias' Tieton land. Earlier replacements of the fence also invaded the Garcias' property. The trial court recognized the encroachment, but refused to order the Henleys to return the fence to its pre-2011 location. The trial court instead granted the Garcias damages of $500 representing the fair market value of the taken land.

The Washington Supreme Court has occasionally addressed the circumstances under which a trial court may deny a landowner the remedy of ejectment when a neighbor encroaches on the landowner's property with the assumption that, if the trial court denies the remedy, the court will award damages for the private taking of property. The high court's decision in *Proctor v. Huntington*, 169 Wn.2d 491, 238 P.3d 1117 (2010) includes an excellent historical narrative of the high court's treatment of this question beginning with early twentieth century decisions. Initially, Washington, under the concept of the sacred standing of property rights, always granted the remedy of ejectment for an encroachment. As time passed, the Washington high court, citing equity and contemporary notions of justice, permitted trial courts to deny ejectment and award money damages under limited circumstances. These later Supreme Court rulings engendered strong dissents that lamented the eroding of property rights and complained of unconstitutional takings of private property.

In 1968, our Evergreen State Supreme Court formulated five factors that a trial court must find before denying an ejectment or injunctive relief for an encroachment. *Arnold v. Melani*, 75 Wn.2d 143. The court held that a mandatory injunction can be withheld as oppressive when:

> (1) The encroacher did not simply take a calculated risk, act [in] bad faith, or negligently, willfully or indifferently locate the encroaching structure;
> (2) the damage to the landowner was slight and the benefit of removal equally small;

2

(3) there was ample remaining room for a structure suitable for the area and no real limitation on the property's future use;
(4) it is impractical to move the structure as built; and
(5) there is an enormous disparity in resulting hardships.

*Arnold v. Melani*, 75 Wn.2d at 152. The high court reaffirmed utilization of these factors in *Proctor v. Huntington*, 169 Wn.2d 491 (2010). Since the high court listed the factors in the conjunctive, presumably the trial court must find all five factors for the court to deny ejectment.

The Washington Supreme Court, in *Arnold v. Melani*, added parameters to the application of the five factors. A property owner still enjoys a sacred right to the protection of private property, and this protection is essential to a free society. *Arnold v. Melani*, 75 Wn.2d at 152. Therefore, a mandatory injunction will ordinarily be issued to compel the removal of an encroachment. *Arnold v. Melani*, 75 Wn.2d at 152. Denial of an injunction is for the exceptional case. *Arnold v. Melani*, 75 Wn.2d at 152. The encroacher must prove the five elements by clear and convincing evidence. *Arnold v. Melani*, 75 Wn.2d at 152.

*Proctor v. Huntington*, 169 Wn.2d 491 (2010) does not detract from the important constraints announced in *Arnold v. Melani*. Proctor reinforced the general rule as requiring an injunction. *Proctor v. Huntington*, 169 Wn.2d at 504. The dissent, without disagreement from the majority, emphasized the need to find each of the five elements by clear and convincing evidence. *Proctor v. Huntington*, 169 Wn.2d at 505 (Sanders, J., dissenting).

3

No. 34189-5-III
*Garcia v. Henley* (dissenting in part)

The trial court in this appeal entered a conclusion of law that reads:

Although Plaintiffs typically would be entitled to an injunction, the Washington Supreme Court in *Proctor v. Huntington*, 169 [Wn].2d 491, 238 P.3d 1117 (2010) recognized in certain adverse possession [encroachment] cases that equitable principles may dictate a different result as to an appropriate remedy. . . . [T]he court concludes that the fence between the Plaintiffs' and Defendants' properties should remain in its current location, and that title to the Plaintiffs' property that is subject to ejectment should be granted to the Defendants.

Clerk's Papers (CP) at 74-75. Nevertheless, the court entered no findings of fact that addressed the five *Arnold* factors. The trial court wrote in its memorandum opinion:

Normally, the Plaintiffs would be entitled to an injunction, directing the Defendants to remove the fence and restore the property line as determined by the Court. However, in [*Proctor v. Huntington*,] 169 [Wn].2d 491, 238 P.3d 1117 (2010), the Supreme Court recognized in certain adverse possession [encroachment] cases, equitable principles might dictate a different result as to an appropriate remedy. I believe this case does warrant application of those equitable principles.

CP at 28. The memorandum opinion lacks a discussion of any facts supporting this ruling. Both the conclusions of law and the memorandum opinion lack any mention of the controlling *Arnold* factors so we cannot be certain that the trial court reviewed all of the factors.

We do not know whether Ted and Audean Henley acted in good faith when moving the fence line in 2011. Ricardo and Luz Garcia readily saw that the relocated fence was further south when they returned from their trip. Ted and Audean Henley could have also readily observed that they encroached on the Garcias' land when erecting the new fence. The record shows no steps having been taken by the Henleys in 2011 to

4

ensure they did not move the location of the fence further south. When re-erecting the fence twice earlier, the Henleys trespassed further on the Garcias' tract. One might wonder why each time the Henleys reinstalled a fence the three mistaken locations always benefited them.

The fence is the only object encroaching on Ricardo and Luz Garcia's land. Ted and Audean Henley have already moved the fence at least thrice. The record contains no evidence of any impracticality of returning the fence to its earlier 2011 location. The record contains no evidence of the cost of moving the fence or a weighing of that cost with the harm to Ricardo and Luz Garcia of the taking of their land.

The majority faults Ricardo and Luz Garcia for not discussing the *Arnold* factors with the trial court before the court's ruling. In doing so, the majority blames the Garcias for failing to respond to a claim about which they lacked notice. The Garcias wanted ejectment, not damages. In their answer to the complaint and cross claim, Ted and Audean Henley denied that the Garcias owned the disputed land. The Henleys' pleading did not seek denial of an ejectment on the basis of the *Arnold* equity principles. In their trial brief, Ted and Audean Henley argued that they owned the property by adverse possession. They did not ask that the court deny ejectment under equity. The Henleys did not raise the *Arnold* factors during closing argument. The Henleys never cited, for the trial court, *Arnold* or *Proctor v. Huntington*. Therefore, the Garcias possessed no reason and no purpose for mentioning or analyzing the *Arnold* factors for the trial court.

5

If Ted and Audean Henley wanted equitable relief under *Arnold*, the Henleys should have put the Garcias on notice and discussed the factors. Presumably the trial court determined on its own to follow *Arnold v. Melani* and *Proctor v. Huntington*.

The majority emphasizes the area of the encroachment being 33.5 square feet. This small measure should be a factor considered by the trial court. Nevertheless, size does not control.

The majority fails to note the continuing encroachments on Ricardo and Luz Garcia's real property by Ted and Audean Henley. The Henleys now know that each time they replace the fence, they may encroach further on the Garcias' land and oblige the Garcias to sue, with the end result that the Henleys receive more territory while the Garcias receive damages exponentially lower than the cost of litigation.

To repeat a key rule of encroachment law, Ted and Audean Henley carried the burden to prove by clear and convincing evidence all five elements emanating from *Arnold v. Melani*. Ordinarily the failure to enter specific findings as to material facts is equivalent to a finding against the party who has the burden of proof. *Pacesetter Real Estate, Inc. v. Fasules*, 53 Wn. App. 463, 475, 767 P.2d 961 (1989). Therefore, this court could reverse the trial court's judgment and remand for entry of an ejectment. I only advocate a remand for further findings.

The majority correctly observes that no decision expressly requires the trial court to enter findings of fact with regard to all *Arnold* factors. Nevertheless, the opposite is

6

also true. No decision expressly excuses a trial court from entering findings of fact. Obviously the trial court, in *Arnold v. Melani*, entered no findings of fact relevant to the factors since the Supreme Court had yet to announce the factors. So *Arnold* cannot stand for the proposition that the factors need not be expressed in findings. As conceded by the majority, the record is not clear as to whether the trial court entered sufficient findings in *Proctor v. Huntington*, 169 Wn.2d 491 (2010).

Washington law is replete with examples where the appellate court reverses and remands for a further hearing if the trial court failed to consider all of the relevant factors on the record. I attach an appendix that nonexhaustively lists decisions demanding a review of all factors on the record.

Ideally, trial courts will enter findings of fact on each factor. *In re Marriage of Horner*, 151 Wn.2d 884, 895, 93 P.3d 124 (2004). Findings of fact play a pivotal role upon review. The purpose of findings on ultimate and decisive issues is to enable an appellate court to intelligently review relevant questions on appeal and, only when it clearly appears what questions were decided by the trial court and the manner in which they were decided, are the requirements met. *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 177, 588 P.2d 729 (1978). Nevertheless, the trial court may be excused from entering express findings of fact if a party presented substantial evidence on each factor and the trial court's oral opinion and written findings of fact reflect that the court considered each factor. *In re Marriage of Croley*, 91 Wn.2d 288, 290-93, 588 P.2d 738

7

(1978). Some decisions even entail the Court of Appeals reviewing the record on its own to determine the satisfaction of legal factors. *State v. Avila*, 78 Wn. App. 731, 735-36, 899 P.2d 11 (1995). Hopefully, the reviewing court's examination of the entire record to find facts is a rare exception, because such review contravenes standards of appellate review.

This reviewing court in this appeal should not independently review the entire record to determine the satisfaction of the *Arnold* factors. The trial court entered no findings of fact on any of the five required factors. The court's memorandum opinion also does not address the factors. The record contains no testimony concerning the cost to move the fence. The credibility of Ted and Audean Henley is key in determining whether they acted in bad faith or good faith. This credibility should be weighed by the trier of fact.

Another reason compels a remand for a further review. Our trial court's decision fails to mention whether the court based its ruling on clear and convincing evidence. For all we know, the trial court based its decision only on a preponderance of evidence. In *In re Custody of A.L.D.*, 191 Wn. App. 474, 363 P.3d 604 (2015), we reversed a trial court's decision awarding custody of a child, in part, because the trial court failed to note that it applied the required clear and convincing evidentiary standard. The majority ignores the burden imposed on Ted and Audean Henley.

An anomaly exists between *Arnold v. Melani* and *Proctor v. Huntington*. In the

former case, the trial court granted, and the Supreme Court affirmed the granting of, an easement to the encroacher. In the latter decision, the trial court granted, and the Supreme Court affirmed the granting of, fee title to the encroacher. Neither opinion weighs the suitability of an easement rather than fee title or vice versa as part of the remedy. I would grant an easement rather than fee title, since the encroacher fails to prove adverse possession. In the event the encroacher abandons its use of the property, the easement could revert or lapse for nonuse. *Smith v. Gilbraith*, 75 Ohio App. 3d 428, 599 N.E.2d 798, 802 (1991); *Oregon Department of Transportation v. Tolke*, 36 Or. App. 751, 586 P.2d 791, 795-96 (1978). A grant of fee title would not revert for nonuse alone.

I would vacate the trial court's decision and remand to the trial court for further entry of findings of fact and, if needed, additional evidence.

Fearing, C.J.

APPENDIX

Competency of a child to testify. *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

Admitting evidence of prior misconduct under ER 404(b). *State v. Asaeli*, 150 Wn. App. 543, 576 n.34, 208 P.3d 1136 (2009).

Admissibility of convictions to impeach the accused under ER 609. *State v. Alexis*, 95 Wn.2d 15, 19-20, 621 P.2d 1269 (1980); *State v. Delker*, 35 Wn. App. 346, 349, 666 P.2d 896 (1983); *State v. Barringer*, 32 Wn. App. 882, 885-86, 650 P.2d 1129 (1982).

Imposition of discovery sanctions. *Foss Maritime Co. v. Brandewiede*, 190 Wn. App. 186, 196-97, 359 P.3d 905 (2015), *review denied*, 185 Wn.2d 1012, 367 P.3d 1083 (2016).

Award of spousal maintenance under RCW 26.09.090. *In re the Marriage of Monkowski*, 17 Wn. App. 816, 819, 565 P.2d 1210 (1977).

Division of property and liabilities in a marital dissolution proceeding under RCW 26.09.080. *In re Marriage of Monaghan*, 78 Wn. App. 918, 920, 899 P.2d 841 (1995).

Award of primary residential placement of children during marriage dissolution proceeding under RCW 26.09.187. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

Relocation of a child's custodian under RCW 26.09.520. *In re Marriage of Horner*, 151 Wn.2d at 892-93 (2004).

Trial continuances in conflict with speedy trial rules. *State v. Williams*, 85 Wn.2d 29, 32, 530 P.2d 225 (1975); *State v. Freeman*, 38 Wn. App. 665, 667-68, 687 P.2d 858 (1984).

Departure from standard range sentence under Sentencing Reform Act of 1981, chapter 9.94A RCW. *State v. Cardenas*, 129 Wn.2d 1, 5-6, 914 P.2d 57 (1996).

Review of *Ishikawa* or *Bone-Club* factors before closing courtroom to public. *State v. Rainey*, 180 Wn. App. 830, 836, 327 P.3d 56 (2014); *State v. White*, 152 Wn. App. 173, 180-81, 215 P.3d 251 (2009).

Applying the most significant relationship test for a choice of law determination. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 735-36 n.6, 254 P.3d 818- (2011).